IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GBFOREFRONT, L.P., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 11-7732 |
| | : | |
| FOREFRONT MANAGEMENT GROUP LLC, | : | |
| Defendant. | : | |
| | : | |

Goldberg, J.                                                                                          September 12, 2012

**<u>Memorandum Opinion</u>**

Plaintiff, GBForefront, L.P. ("GBForefront"), has brought suit against Defendant, Forefront Management Group LLC ("Forefront"), alleging three causes of action arising out of an investment agreement between the parties. Specifically, Plaintiff's complaint alleges breach of contract (Count I), unjust enrichment (Count II) and fraud (Count III).

Presently before the Court is Defendant's Motion to Dismiss or Transfer Venue. For reasons set forth below, Defendant's motion will be granted in part and denied in part.

**I.   Factual Background**

Based upon the averments in the complaint, the pertinent facts, viewed in the light most favorable to Plaintiff, are as follows:

Plaintiff is a Pennsylvania limited partnership located in Conshohocken, Pennsylvania. Plaintiff was formed for the purpose of making an investment with Defendant, a Delaware limited liability company located in New York City. At all times relevant to the present suit, Warren Weiner was Plaintiff's principal.[1]  (Compl. ¶¶ 5-6, 11.)

On May 12, 2010, Plaintiff purchased a $2,500,000 note from Defendant pursuant to a

---

[1] Weiner maintained this status until his death in February 2012.

Convertible Note Purchase Agreement (hereinafter, "Purchase Agreement"). The agreement, among other things, obligated Defendant to follow certain warranties and covenants, the breach of which would render it in default on the note. (Compl. ¶¶ 2, 17-18.)

Beginning in May, 2011, Plaintiff allegedly discovered that Defendant had violated the note and agreement. In response, Plaintiff demanded immediate repayment of the unpaid principal on each note, the interest accrued and unpaid and all other amounts payable. On December 20, 2011, after unsuccessful attempts to negotiate a resolution to this dispute, Plaintiff initiated the instant suit. (Compl. ¶¶ 20-21, 23, 27, 29-31.)

## II. Discussion

Defendant raises several arguments in its motion. We will address each in turn.[2]

### A. Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

Defendant first moves to transfer venue to the Southern District of New York. Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." At the outset, the party moving to transfer must demonstrate that venue, personal jurisdiction and subject matter jurisdiction would have been proper in the proposed transferee district.[3] Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). A court must then weigh

---

[2] Because Defendant has withdrawn its motion to dismiss for lack of personal jurisdiction and forum non conveniens, we need not address these arguments. (See Def.'s Reply Br. 1.) As such, that portion of the motion is denied as moot.

[3] Defendant argues that the Southern District of New York is a permissible venue for this action because Defendant is located in that district, subject to personal jurisdiction in New York and the Southern District of New York would have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Def.'s Br. 15-16.) Plaintiff does not dispute that Defendant's proposed transferee district would be a proper forum for this suit.

"relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Factors to consider include: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) where the claims arose; (4) the convenience of the parties and witnesses; (5) the location of the relevant books and records (collectively, the "private interests"); (6) the enforceability of the judgment; (7) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (8) relative court congestion in the two fora; (9) the local interest in deciding local controversies at home; (10) the public policies of the fora; and (11) in a diversity case, the familiarity of the trial judge with applicable state law (collectively, the "public interests"). Id. at 879-80.

While the district court maintains discretion to transfer venue, a transfer should not be liberally granted. Shutte, 431 F.2d at 25. Unless the balance of convenience to the parties strongly favors the defendant, the choice of forum should prevail. Id. The burden of showing the need for transfer rests with the moving party. Jumara, 55 F.3d at 879.

The crux of Defendant's argument is that Plaintiff filed its complaint in Pennsylvania to hinder Defendant's ability to have all claims related to this dispute—which Defendant claims are governed by New York law—litigated in one action. (Def.'s Reply Br. 1.) Defendant contends that a balancing of interests "tips" in favor of transfer in that: (1) with the passing of Weiner, there are no witnesses located in Pennsylvania, and thus the costs and inconvenience to the witnesses is increased and discovery may be more difficult; (2) all of Defendant's applicable documents are

located in New York; (3) the notes and Purchase Agreement are governed by New York law,[4] and many of the claims at issue arose in New York, which gives New York a local interest in deciding the case; and (4) transfer will promote efficiency because Defendant intends to initiate a countersuit against Plaintiff as well as related third-party lawsuits that can only be brought in New York. (Def.'s Br. 14-16; Def.'s Reply Br. 1, 3-4.)

Plaintiff responds that Defendant has failed to overcome the presumption in favor of maintaining a plaintiff's choice of forum. Specifically, Plaintiff argues that: (1) the close proximity of the venues significantly undermines Defendant's position; (2) even with Weiner's passing, most of the witnesses and relevant documents are located within this district; (3) Defendant cannot defeat Plaintiff's forum selection by asserting its intention to file additional lawsuits that it claims are related to this action; (4) the mere fact that a Pennsylvania court is called upon to apply New York law does not justify transfer; (5) the Southern District of New York has an extreme backlog of cases compared with the Eastern District of Pennsylvania; and (6) this Court has an interest in ensuring proper and efficient adjudication of claims brought by residents and businesses of this district against foreign businesses. (Pl.'s Br. in Opp'n 12 n.4, 13-14 n.5, 15-19.)

After careful consideration of the relevant factors, we conclude that Defendant has not demonstrated that a transfer is warranted. Plaintiff has chosen to pursue litigation in this district, its home forum, and this choice is to be given great deference. See FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 750 (E.D. Pa. 2005). Defendant has failed to adequately show why this

---

[4] The "governing law" provision of the Purchase Agreement states that the agreement "shall be construed in accordance with and governed by the laws of the State of [New York] without giving effect to any choice of law or conflicts of law." (Def.'s Br. 17.) Plaintiff does not dispute the application of New York law to its claims.

4

choice should be disturbed.

First, the private interest factors fail to tip the balance in Defendant's favor. Because of the close proximity of the two fora, inconvenience to the parties is not a significant concern. In fact, this district has routinely refused to transfer actions to New York in large part because of the relatively short distance between venues and the ready availability of transportation. See e.g., Morris Black & Sons v. Zitone Constr. & Supply Co., 2004 WL 2223310, at *3 (E.D. Pa. Oct. 1, 2004) (finding that "[t]he relatively short distance between [the Eastern District of Pennsylvania] and the Southern District of New York weighs heavily against the transfer of this action").

Public interest considerations also favor a denial of Defendant's request. While a federal court in New York may be more familiar with that state's law, Defendant gives no indication that additional familiarity with New York law is required to adjudicate this dispute. Indeed, courts in this district have previously handled New York state law issues. See Leone v. Cataldo, 574 F. Supp. 2d 471, 486 (E.D. Pa. 2008) (giving little weight to this factor due to this district's prior experience with New York state law issues). Further, Pennsylvania's local interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985), also justifies retention of this suit in the Eastern District of Pennsylvania. Finally, Defendant has failed to show that practical considerations or judicial efficiency favor transfer. There is no indication that litigating this case here would result in any more administrative difficulty or congestion than litigating it in the Southern District of New York. Moreover, with regard to efficiency, Defendant has not demonstrated why the third-parties it desires to sue must be joined in this action or why litigation should not proceed without them.

In sum, after considering all relevant private and public interests, we conclude that

Defendant's motion to transfer venue should be denied.

### B. Motion to Dismiss Counts II and III

Defendant next moves to dismiss the unjust enrichment and fraud counts of Plaintiff's complaint.

#### 1. Standard of Review

When ruling on a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  The court may dismiss a complaint or claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  However, a plaintiff must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

#### 2. Count II: Unjust Enrichment

Under New York law, "a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987).  A party cannot recover damages for unjust enrichment where the "suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute

between the parties." Id. at 389. Nevertheless, a party may plead both breach of contract and unjust enrichment "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." Curtis Props. Corp. v. Greif Cos., 653 N.Y.S.2d 569, 571 (N.Y. App. Div. 1997).

Here, Plaintiff's unjust enrichment claim arises out of the same subject matter as its contract claim—that is, whether Defendant has retained the Plaintiff's investment while in violation of the Purchase Agreement. Further, Defendant does not dispute that a valid contract exists between the parties. (See Def.'s Reply Br. 5) (stating that any dispute regarding the validity of the Purchase Agreement is "in Plaintiff's imagination"). Therefore, there can be no recovery for unjust enrichment.[5]

### 3. Count III: Fraud

To state a cause of action for fraud under New York law, a plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996). Where breach of contract is alleged, a party's ability to plead fraud is limited. To maintain both causes of action, a plaintiff must either: (1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral to the contract; or (3) seek special damages caused by the misrepresentation that are

---

[5] Mindful of Plaintiff's concern that Defendant may later challenge the contract's validity, Defendant's motion to dismiss Plaintiff's unjust enrichment claim will be granted without prejudice.

unrecoverable as contract damages. Id. at 20.

One permissible cause of action involving allegations of fraudulent misrepresentation collateral to the contract is fraud in the inducement. W.I.T. Holding Corp. v. Klein, 724 N.Y.S.2d 66, 68 (N.Y. App. Div. 2001). In order to state a claim for fraud in the inducement of a contract, a plaintiff must demonstrate that the defendant had a present intention to deceive at the time of promissory representations. Non-Linear Trading Co. v. Braddis Assocs., Inc., 675 N.Y.S.2d 5, 13 (N.Y. App. Div. 1998). "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318 (1995).

In its complaint, Plaintiff asserts that Defendant committed three instances of fraud. For the reasons that follow, we find that each instance fails to state a claim.

First, Plaintiff alleges fraudulent inducement by asserting that, in soliciting Plaintiff's investment, Defendant misrepresented that it would honor the terms of the Purchase Agreement. (Compl. ¶ 47.) Plaintiff points to paragraphs 12, 14 and 20 of the complaint as providing detailed allegations of these misrepresentations. (Pl.'s Br. in Opp'n 20.) However, our reading of the complaint finds no mention of false information being provided prior to executing the contract at issue or any other misrepresentations made to induce Plaintiff to enter into the agreement.[6] Plaintiff only alleges that Defendant represented that it would not breach the Purchase Agreement, and subsequently did breach that agreement. (Compl. ¶ 47.) As this is merely a general allegation that

---

[6] As such, the cases cited by Plaintiff, First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17 (N.Y. App. Div. 1999), and RKB Enters. v. Ernst & Young, 582 N.Y.S.2d (N.Y. App. Div. 1992), are distinguishable. These cases involved deliberate misrepresentations of material facts, which are not evident from the present complaint.

Defendant lacked the intent to perform on the contract, this inducement charge fails to meet the requirements of Rule 12(b)(6). See New York Univ., 87 N.Y.2d at 318.

Plaintiff next asserts that Defendant committed fraud by intentionally refusing to provide notice of default. (Compl. ¶ 47.) Considering the three instances where fraud can be pled alongside breach of contract, this charge is insufficient. First, the agreement between the parties specifies that Defendant was to provide notice of "the occurrence of any Event of Default." (Compl. ¶ 17; Ex. B, at § 7.1(c).) Thus, the duty to inform Plaintiff of a default event was a contractual duty rather than an independent legal duty. Second, the alleged misrepresentation falls directly under the terms of the Purchase Agreement, and, as such, is not collateral. Third, the complaint fails to allege any special damages sustained from this concealment and any damages suffered are recoverable under the breach of contract claim. Therefore, no relief may be granted on this claim.

Plaintiff's final allegation of fraud alleges that Defendant failed to negotiate a repayment schedule in good faith following default. (Compl. ¶ 47.) Again, Plaintiff fails to show how this allegation is distinct from a breach of contract claim. Breach of the implied duty of good faith is a contractual breach rather than a breach of a separate legal duty. See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) ("parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract"). Moreover, this claim is not collateral to the Purchase Agreement because the alleged misrepresentation is just a further breach of the agreement. Lastly, Plaintiff fails to address any specific injury suffered as a result of Defendant's alleged bad faith. The negotiations sought repayment of the amounts owed to purchasers of notes, which is the same recovery sought in the breach of contract claim. Thus, Plaintiff has failed to state a claim with respect to its third charge,

9

and, as such, the motion to dismiss Count III for Fraud is granted with prejudice.[7]

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part. An appropriate Order follows.

---

[7] We note that, in light of our finding that the complaint fails to state a claim of fraud, we need not address Defendant's contention that Plaintiff's fraud allegations do not satisfy Rule 9(b).