## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GBFOREFRONT, L.P.** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff and Counterclaim Defendant,** | : | |
| **v.** | : | **NO. 2:11-cv-07732-MSG** |
| | : | |
| **FOREFRONT MANAGEMENT** | : | |
| **GROUP, LLC** | : | |
| | : | |
| **Defendant and Counterclaim Plaintiff,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **FOREFRONT CAPITAL MANAGEMENT,** | : | |
| **LLC, FOREFRONT CAPITAL MARKETS,** | : | |
| **LLC and FOREFRONT ADVISOR, LLC** | : | |
| | : | |
| **Additional Defendants,** | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO VACATE JUDGMENTS, AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTIONS

GB Forefront, L.P. ("GBForefront" or "GBFF" or plaintiff), plaintiff herein, through its undersigned counsel, Lightman & Manochi, hereby respectfully submits this Memorandum of Law in opposition to the defendants' Cross-Motion (docket no. 177) to Vacate the April 28, 2015 Judgment (docket no. 161) and the May 27, 2015 Amended Judgment (docket no. 168) (collectively the "Judgments"). This Memorandum of Law also is submitted in further support of GBFF's Motion for Entry of Consent Judgment against Forefront Capital Markets (docket no. 169), and in further support of its Motion to Quash the TD Bank Subpoena (docket no. 173).

For the reasons set forth herein, and in Plaintiff's moving papers, GBForefront's Motion to Enter Consent Judgment Against Forefront Capital Markets LLC ("Forefront Capital") should be granted, this Honorable Court should enter the Consent Judgment

against Forefront Capital, and the Court should deny in full the Cross-Motion of defendants. Finally, this Court should grant GBFF's Motion to Quash the TD Bank Subpoena.

## I.  **PRELIMINARY NOTE**

Defendants are in default of the May 22, 2015 Settlement Agreement by virtue of their undisputed failure to make the $150,000 payment due on November 30, 2015. Respectfully, Plaintiff's Motion to Enter the Consent Judgment against Forefront Capital (docket no. 169) should be granted, and defendants' Cross-Motion to Vacate Judgments (docket nos. 176-177) should be denied.

GBFF respectfully submits that this Honorable Court does not have to address the lack of diversity argument advanced by defendants now, for the first time, in 2016, because *the defendants voluntarily entered into a Settlement Agreement on May 22, 2015 (hereinafter the "Settlement Agreement"), settling the dispute that was pending in this Court*. The Settlement Agreement is a contract, and irrespective of whether the Court initially had jurisdiction, the case law is clear and this Court has the power to enforce the Settlement Agreement without regard to plaintiff's new claim of a lack of subject matter jurisdiction.

However, even assuming this Court required prior subject matter jurisdiction to act upon and issue orders with respect to the Settlement Agreement (which is simply not the case), this Court does, in fact, have proper subject matter jurisdiction under diversity pursuant to 28 U.S.C. § 1332. As set forth herein and in the annexed affidavit of Kimberly W. Block, subject matter jurisdiction under 28 U.S.C. § 1332 (diversity), indisputably exists in this case.

2

During the course of this five-year-old case, defendants not only answered GBFF's Complaint and Amended Complaint, but on October 5, 2012, defendants also affirmatively filed a Counterclaim (docket no. 22), and on February 7, 2014, defendants also filed an Amended Answer with Counterclaim (docket no. 83). When defendants filed their Counterclaim, and the Amended Answer and Counterclaim, defendants stated in their filed pleading that jurisdiction for their Counterclaim was proper in this Court based upon diversity, thus admitting that diversity jurisdiction existed.

On October 19, 2012, defendant Forefront Management Group, LLC ("FFMG") filed a Third Party Complaint (docket no. 25), joining Penny Weiner and Geoffrey Block as third-party defendants to this action. When FFMG filed their Third Party Complaint, asserting claims against Geoffrey Block and Penny Weiner, personally, defendant stated in their pleading that jurisdiction was proper with respect to the Third Party Claims based upon diversity, thus admitting, again, that diversity jurisdiction existed.

Now, five years later, after defendants affirmatively stated in several of their own pleadings that diversity jurisdiction was proper, and after they *consented* to the entry of a $6.8 million dollar judgment against them, and most importantly, after defendants entered into a binding Settlement Agreement; defendants now, conveniently, seek to challenge jurisdiction. Defendants failed to schedule, let alone conduct, any depositions or any other jurisdictional discovery in support of their utterly specious claims. They have not proven, and cannot prove, that there is no diversity jurisdiction in this case. Because there was, and is, diversity jurisdiction in this case.

However, even if there was no diversity jurisdiction, principles of judicial estoppel and the admissions made by defendants preclude the relief defendants are

seeking in their Cross-Motion. And defendants' breach of contract (i.e., their failure to make the $150,000 Settlement payment required to be made by November 30, 2015, under the terms of the Settlement Agreement), entitles GBFF to the entry of the Consent Judgment, as a matter of basic contract law. Even in the (very unlikely) event that defendants' claims had any merit, the proper remedy would not be to vacate the Judgments and start all over again, but to transfer the Judgments and the proceeding to the Pennsylvania state court (Court of Common Pleas), pursuant to 42 Pa. C.S.A. 5103(b).

In sum, this Court has the power and the jurisdiction to enforce the Settlement Agreement reached between the parties to this lawsuit. And even if there were no such contract, this Court had (and has) complete diversity jurisdiction. Plaintiff's Motion to Enter the Consent Judgment against Forefront Capital (docket no. 169) should be granted, because of defendants' default in failing to make the $150,000 payment due on November 30, 2015, and the Cross-Motion made by defendants to vacate the Judgments should be denied in its entirety.

In addition, defendants claim that the Subpoena they served on TD Bank should not be quashed, and that they should e allowed to obtain documents from TD Bank to support their claim that diversity jurisdiction is lacking. However, the only documents requested in that TD Bank Subpoena are "true copies of all records in your custody, possession or control reflecting all payments to, or recipients of, funds, including checks (front and back), money orders, and/or wire transfer records, drawn against the account of plaintiff/counterclaimant GBForefront LP, *at any time on or after May 26, 2015 through the date of compliance with this subpoena*" (emphasis added). None of the requested

4

documents relate to December of 2011, when this lawsuit was started. Thus, none of the documents are relevant or material to the issue of whether diversity jurisdiction existed on December 20, 2011, when the Complaint was filed. Because of that, as well as the other deficiencies in the Subpoena (e.g., the wrong docket number reflected on the Subpoena), as set forth in detail in GBFF"s Motion to Quash Subpoena (docket no. 173), plaintiff's Motion to Quash should be granted and the TD Bank Subpoena quashed.

## II.   RELEVANT FACTUAL BACKGROUND

On December 20, 2011, Cozen and O'Connor, on behalf of plaintiff GBFF filed a Complaint for GBFF and started the instant lawsuit (docket no. 1). In the Complaint, GBFF stated in paragraph 5 as follows:

> 5. GBForefront, L.P is a Pennsylvania limited partnership with its address in Montgomery County at 100 West Elm Street, Suite 400, Conshohocken, Pennsylvania, 19428. Its general partner is GBForefront General L.L.C, a Pennsylvania limited liability company, and its limited partner is WFP2, L.P., both with the same address in Conshohocken, Pennsylvania. Warren Weiner, a resident of Montgomery County, Pennsylvania, is a member of both GBForefront General LLC and WFP2, L.P.

In the Complaint GBFF stated that jurisdiction was proper in this Court based upon diversity jurisdiction under 28 U.S.C. sec. 1332, "because it is a lawsuit between citizens of a State [sic] and citizens or subjects of a foreign State, and because the amount in controversy exceeds $75,000, exclusive of interest and costs." *See*, Complaint, at para. 8. The Complaint (at para 6), sets forth the New York addresses of the defendants, and each of those paragraphs also states that "none of [the named defendant's] members are residents of Pennsylvania". When Cozen and O'Connor first filed the Complaint for GBFF on December 20, 2011, complete diversity existed between plaintiff and

defendants. For the purposes of determining diversity, the moment that the Complaint is filed is the only relevant moment of inquiry.

Plaintiff GBFF and its related entities are all citizens of the Commonwealth of Pennsylvania. By defendants' admissions, they are citizens of the States of New York, New Jersey, or Delaware. Complete diversity existed when the action was commenced and that is all that is required for diversity jurisdiction to exist under 28 U.S.C. sec. 1332.

Plaintiff GBForefront, L.P is a Pennsylvania limited partnership. *See*, Amended and Restated Agreement of Limited Partnership of GBForefront, LP dated August 31, 2010 (the "GBFF LPA"), attached as Exhibit "G" to the Declaration of Sean Corgan, Esquire (new counsel for defendants), filed January 22, 2016 (the GBFF LPA can be found at docket no. 176-11, at pp. 2-31). For the Court's convenience, the Exhibit "A" to the GBFF LPA, which identifies the partners of GBFF and sets forth their percentage interests, also is appended to the end of this Memorandum. At the relevant time, specifically when this lawsuit was commenced, GBFF had a general partner with a 1% ownership interest (GBForefront General L.L.C, a Pennsylvania limited liability company). *Id.*; *see also*, Exhibit "A" attached hereto. **GBForefront General L.L.C was 100% owned by Warren Weiner (a Pennsylvania resident)**.

GBFF's other partner, a limited partner that owned 99% of GBFF at the time the Complaint was filed, is WFP2, L.P. *Id.*; *see also*, Exhibit "A" attached hereto. WFP2, LP is a Pennsylvania limited partnership that was formed by Warren Weiner to provide for his grandchildren. The principals of WFP2, LP when this case was filed were Warren Weiner and a series of Pennsylvania trusts, each one established by Warren Weiner for the benefit of each of his grandchildren. The Trustees of the children's Pennsylvania

Trusts when this action was commenced were Warren Weiner and/or Penny Weiner, both Pennsylvania residents. After Warren Weiner passed away, the children's (Pennsylvania) Trusts became the sole owners of WFP2, LP. Complete diversity existed between plaintiff GBFF and defendants when the Complaint was filed in December 2011.

Defendant initially responded to the Complaint by filing a Motion to Dismiss (docket no. 10), in which, inter alia, defendant challenged the personal jurisdiction of the Court. Nowhere in their Motion to Dismiss did defendants claim that diversity jurisdiction did not exist in this case.

On October 5, 2012, defendant filed their Answer and Counterclaim (docket no. 22) in response to GBFF's initial Complaint. In paragraph 3 of their Counterclaim, *defendants* state as follows:

> "3.     Subject matter jurisdiction exists pursuant to 28 U.S.C. sections 1332, because the counterclaim parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs."

On October 19, 2012, defendant FMG filed a Third Party Complaint (docket no. 25), against Penny Weiner and Geoffrey Block, individually. In paragraph 4 of their Third Party Complaint, *defendants* state in relevant part as follows:

> "4.     Subject matter jurisdiction exists pursuant to 28 U.S.C. sections 1332 and 1367, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs...."

On February 7, 2014, defendants filed their Amended Answer and Counterclaim (docket no. 83) in response to GBFF's Amended Complaint. In paragraph 3 of their Counterclaim, *defendants* state as follows:

> "3.     Subject matter jurisdiction exists pursuant to 28
> U.S.C. section 1332, because the counterclaim parties are
> of diverse citizenship and the amount in controversy
> exceeds $75,000 exclusive of interest and costs."

For the five years that this case was pending before this Honorable Court, both

plaintiff and defendants litigated the issues involved in the Complaint, the Counterclaim,

and the Third Party Complaint.  Defendants filed numerous motions in this Court.  No

one, at any time, contested subject matter jurisdiction.  To the contrary, on at least three

separate occasions, *defendants* themselves affirmatively represented to this Court, and to

GBFF, and counsel, that "subject matter jurisdiction exists".  Defendants used diversity

jurisdiction as their basis to assert a Counterclaim in this Court, and also to assert a Third

Party Complaint in this Court.

Now, facing the prospect of the entry of a $6.8 million Consent Judgment against

Capital Markets due to the failure of the Forefront defendants to make the third

Settlement payment of $150,000 required to be made by November 30, 2015, defendants

scuttled their original counsel (who signed their three pleadings – each of which contain

an admission that subject matter jurisdiction was proper in this Court based upon

diversity jurisdiction).  Defendants obtained replacement counsel, it would seem, for the

express purpose of advancing the baseless argument that this Court *may* lack diversity

jurisdiction.  However, Defendants have not proven, and cannot prove, that diversity

jurisdiction did not exist at the time the Complaint was filed.  Because, as set forth above,

diversity jurisdiction did exist. Defendants did not schedule, let alone conduct, any

depositions or other jurisdictional discovery in support of their claims

On April 28, 2015, a Judgment for $6.8 million was entered in favor of

GBForefront and against each of the defendants (Forefront Capital, and FFMG, and

Forefront Capital Management, Inc. ("FFCM"), and Forefront Advisors, LLC ("FA") (collectively "Initial Forefront Judgment Defendants"), based on GBForefront's acceptance of the Initial Forefront Judgment Parties' Offer of Judgment served on April 14, 2015 (the "Judgment").

**GBForefront then entered into a written Forbearance and Settlement Agreement and Conditional Release effective as of May 22, 2015** (the "Settlement Agreement"), with Forefront Capital, and FFCM, and FFMG, and FA, which Settlement Agreement was consented to by Bradley Reifler, individually and on behalf of certain "Additional Entities" as defined in the Settlement Agreement.   The Settlement Agreement, by its terms is to be kept confidential, but at the Court's request, will be submitted to the Court under seal or for an *in camera* inspection.

The terms of the Settlement Agreement in relevant part provide as follows:

(a)     The April 28, 2015 Judgment would be amended by consent, to remove Forefront Capital as an Initial Forefront Judgment Defendant; and

(b)     A Consent Judgment (in the form attached as Exhibit "A" to the Certification of plaintiff's counsel submitted with GBFF's Motion to Enter Consent Judgment Against Forefront Capital), that re-enters Judgment in favor of GBFF against Forefront Capital for $6.8 million, and that makes Forefront Capital individually, jointly and severally liable with the other Judgment defendants, was signed and held in escrow by plaintiff's counsel; and

(c)     Certain Forefront entities would make periodic settlement payments to GBFF; and

(d)     In the event of any payment or other default, GBForefront may immediately file the Consent Judgment with the Court for entry in this lawsuit, to obtain a Consent Judgment in favor of GBForefront against Forefront Capital for $6.8 million, plus interest from April 28, 2015, less any settlement payments made, and GBForefront may seek enforcement and execution of the Amended Judgment and/or the Consent Judgment, and exercise any and all other rights, remedies, claims and demands to which GBForefront is or may be entitled.

After the Settlement was executed, the parties jointly made a Motion, pursuant to the Settlement Agreement, to amend the 4/28/15 Judgment, to remove Forefront Capital as a named Judgment debtor from that Judgment, which joint motion was granted by the Court.

Forefront made the initial $200,000.00 payment required under the Settlement Agreement (when the Settlement was executed), and the first installment payment of $150,000.00 (required to be made by August 31, 2015).  A payment of $150,000.00 was required under the Settlement Agreement to be made to GBForefront by no later than November 30, 2105.  Forefront defaulted under the Settlement Agreement, by failing to make the required $150,000.00 payment, either by the November 30, 2105 deadline, or to date.

On December 4, 2015, a Notice of Default was sent both by email and by overnight delivery to the Forefront Entities, c/o Bradley Reifler, Esquire, and to David Wasitowski, and to their counsel, under the Settlement Agreement.  Defendants failed to make the $150,000 payment due on November 30, 2015, either when it was due, or to date.

10

The Settlement Agreement provides in relevant part (in section 6) as follows: "Upon a Default...the Consent Judgment can be immediately filed with the Court for entry in [this lawsuit]...." Pursuant to the terms of the Settlement Agreement, GBForefront is entitled to the entry of the Consent Judgment, because of Forefront's payment default under the Settlement Agreement, in failing to make the $150,000.00 payment required to be made by November 30, 2015. On December 18, 2015, GBForefront filed its Motion to Enter Consent Judgment Against Capital Markets (docket no. 169).

On or about December 31, 2015, defendants caused a Subpoena to be issued and served upon TD Bank. The Subpoena has a case docket number (13-cv-6901), which is not the case docket number for this case (11-cv-7732). The Subpoena also requests documents showing payments into GBFF's account, and disbursements made from GBFF's account, "from and since May 26, 2015". The Subpoena does not request any documents in or around the December 2011 timeframe of the filing of the Complaint. As such, it is clear that the Subpoena has nothing to do with challenging diversity, but instead, is meant to harass.

### III.   LEGAL ARGUMENT

**A.   THE CONSENT JUDGMENT SHOULD BE ENTERED AGAINST FOREFRONT CAPITAL BECAUSE THE SETTLEMENT AGREEMENT IS A BINDING CONTRACT BETWEEN THE PARTIES, AND DEFENDANTS BREACHED THE CONTRACT BY FAILING TO MAKE THE REQUIRED SETTLEMENT PAYMENT**

GBFF is entitled to the entry of the Consent Judgment, because of defendants' breach of the Settlement Agreement by failing to make the $150,000 Settlement payment

due by November 30, 2015, irrespective of whether or not the Court had subject matter jurisdiction in the first place. As set forth herein, whether subject matter jurisdiction existed is of no moment, as the Settlement Agreement renders the issue academic.

Defendants are asking this Court to overturn the Settlement Agreement, *after* the settlement of this case, Defendants make such request after they not only admitted the jurisdictional allegations that are now being challenged, but also after they relied upon those same jurisdictional allegations as their basis to assert a Counterclaim, as well as a Third Party Complaint.

With respect to the enforceability of the Settlement without regard to the existence of jurisdiction in the underlying action; the seminal case on this point, followed by most of the Circuit Courts, **including the Third Circuit**, is <u>Meetings & Expositions, Inc. v. Tandy Corp.</u>, 490 F.2d 714 (2d Cir. 1974). In the <u>Meetings & Expositions</u> case, the parties chose to settle the matter and entered into a settlement agreement. After one of the parties to the settlement failed to perform, that party sought a dismissal of the case for lack of jurisdiction. The Second Circuit reversed the dismissal of the case, and stated: "Indeed, execution of the stipulation rendered the previous controversy academic. A stipulation and agreement of settlement, entered in the action and 'so ordered' by the judge, is quite different from a general appearance. **Whether or not the court previously had personal jurisdiction over [defendant], the stipulation was a consent to the exercise of the court's power to compel compliance. ... A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.**" <u>Meetings & Expositions</u>, *supra* (citations omitted).

The Third Circuit, citing to the <u>Meetings & Exposition</u> case, in <u>Cooper-Jarrett,</u> <u>Inc. v. Cent. Transp., Inc.</u>, 726 F.2d 93 (3d Cir. 1984), similarly holds that: "when parties stipulate to the settlement of an action they thereby 'consent to the exercise of the court's power to compel compliance.'" <u>Id</u>. And the Third Circuit goes a bit further in <u>Fox v.</u> <u>Consol. Rail Corp.</u>, 739 F.2d 929 (3d Cir. 1984), stating: "It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. **Typically, the court does this without inquiring into, or requiring, an independent basis of subject matter jurisdiction for the enforcement/challenge suit.**" (citations omitted).

The Sixth Circuit, citing to the <u>Meetings & Exposition</u> case, is in accord with the Third Circuit: **"Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic."** <u>Aro Corp. v. Allied Witan Co.</u>, 531 F.2d 1368, 1371 (6th Cir. 1976).

The enforcement of a settlement agreement is a matter of contract law and governed by state law principles (to be adjudicated by the district court that served as the venue for the underlying dispute). <u>Dugan v. O'Hara</u>, No. CV 14-5252, 2015 WL 5116726 (E.D. Pa. Aug. 31, 2015) ("The validity and enforceability of settlement agreements is governed by state contract law"); <u>Shell's Disposal & Recycling, Inc. v. City of Lancaster</u>, 504 Fed.Appx. 194, 200 (3d Cir.2012). "It is by now axiomatic under Pennsylvania law that 'the test for enforceability of [a settlement] agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.' " <u>Calif. Sun Tanning USA, Inc. v. Elec. Beach, Inc.</u>,

369 Fed.Appx. 340, 346 (3d Cir.2010) (*quoting* Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298–99 (3d Cir.1986)). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." Espenshade v. Espenshade, 729 A.2d 1239, 1243 (Pa.Super.Ct.1999). "An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir.1970). "Where the parties have agreed on the essential terms of a [settlement agreement], the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." Mazzella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (1999) (citations omitted); *see* Thomas v. Univ. of Pa., No. 06–1916, 2007 WL 2891739, at *2 (E.D.Pa. Oct. 2, 2007) ("A settlement agreement is still binding even if ... a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." (quotation marks omitted). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced." *Id.*

In the instant case, defendants cannot claim that the Settlement Agreement is unenforceable by now claiming, *for the first time*, after GBFF has moved to enter the Consent Judgment following defendants' uncontested failure to make the $150,000 Settlement payment due by November 30, 2015, that jurisdiction in this case is not proper. **Any assertion of a lack of jurisdiction is entirely irrelevant and rendered "academic" in light of the Settlement Agreement and defendants' breach thereof.**

Defendants and GBFF entered into the Settlement Agreement, and this Court has the power to enforce that Settlement, even if jurisdiction was not proper (and there is no evidence that jurisdiction was improper). Pursuant to that Settlement, the parties made a Joint Motion to amend the 4/28/15 Judgment (docket nos. 165 and 166). The Joint Motion was granted, and the judgment was amended to remove Forefront Capital from the initial Judgment (docket nos. 167 and 168). In order to grant defendants' Cross Motion, this Honorable Court would have to ignore the well-settled law of nearly every Circuit Court of Appeals, including the Third Circuit, that recognizes and establishes that a Court has jurisdiction to enforce a Settlement made in a case pending before that Court, and that jurisdiction is irrelevant at this late juncture.

Accordingly, GBFF's Motion to Enter the Consent Judgment against Forefront Capital (docket no. 169) should be granted, and defendants' Cross-Motion to Vacate Judgments (docket nos. 176-177) should be denied.

### B.    THERE WAS, AND IS, COMPLETE DIVERSITY JURISDICTION

Even if no Settlement had been entered into between the parties, the contention of defendants, that the Court lacks diversity jurisdiction, is without any merit, and lacks either a factual or legal basis. Reference is made to the affidavit of Kimberly W. Block, accompanying this submission, which establishes the basis for diversity.

When Cozen and O'Connor filed its first Complaint for GBFF on December 20, 2011, complete diversity existed between plaintiff and defendants. As set forth in the accompanying Affidavit of Kimberly W. Block, Plaintiff GBFF and its related entities are all citizens of the Commonwealth of Pennsylvania. By defendants' admissions, they are

citizens of the States of New York, New Jersey, or Delaware.   As such, complete diversity was present when this case was filed.

It is well settled that the moment in time that is relevant for determining diversity of citizenship for the purposes of subject matter jurisdiction under 28 U.S.C. 1332 is the time at which the complaint is filed. Freeport-McMoRan, Inc. v. K N Energy, Inc. 498 U.S. 426, 428 (1991).   Moreover, any subsequent acts by defendants (in adding parties, etc.) are similarly irrelevant. Jurisdiction once acquired ... is not divested by a subsequent change in the citizenship of the parties. *Id.* Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties." *Id.*

In sum, defendants' assertions, that this Honorable Court lacks subject matter jurisdiction because there is no complete diversity, are completely without any factual or legal merit whatsoever.   GBFF was a citizen of Pennsylvania when this action was commenced.   Defendants, by their own admission, are citizens of New York, and New Jersey, and Delaware.   Complete diversity between plaintiff and defendants existed when the lawsuit started and that is all that matters.

Respectfully, the Cross-Motion to Vacate Judgments based upon lack of diversity jurisdiction should be denied.

### C.   PRINCIPLES OF JUDICIAL ESTOPPEL PREVENT DEFENDANTS FROM CHALLENGING THEIR ADMISSIONS IN THEIR COUNTERCLAIM, THIRD PARTY COMPLAINT AND IN THIS LAWSUIT, THAT THERE WAS DIVERSITY JURISDICTION

This Honorable Court should not countenance the recent conduct of defendants, which smacks of bad faith.  Defendants did not raise *the alleged* lack of subject matter

jurisdiction when they filed their Motion to Dismiss the Complaint on January 26, 2012 (docket no. 10), or at any time during the five-year pendency of this case. In fact, and to the contrary, defendants represented to this Court that the Court had subject matter jurisdiction based upon diversity, in at least three separate affirmative pleadings in their first Counterclaim that they filed on October 5, 2012 (docket no. 22); and in defendant FFMG's Third Party Complaint that they filed on October 19, 2012 (docket no. 25); and in their second Counterclaim that they filed on February 7, 2014 (docket no. 83).

Defendants led this Court, and GBFF, and opposing counsel, for the five years that this case was pending, to believe that jurisdiction based upon diversity was uncontested. This Court should not and must not let defendants ignore the multiple prior admissions of diversity jurisdiction made by defendants over the five years that this case was litigated, so that they may now turn around and raise a purported lack of jurisdiction that is, after all, based on nothing in fact or law. To call this a stall or delay tactic would be to state matters mildly.

When it suited their purposes, defendants represented to the Court that subject matter jurisdiction was proper based upon diversity. They are estopped, under basic principles of judicial estoppel, from now attempting to disavow their admissions that they made in several affirmative pleadings, merely because it now suits their purposes to claim that diversity jurisdiction somehow does not exist, in this, their last-ditch attempt to avoid the $6.8 million Consent Judgment from being entered against Forefront Capital.

It also smacks of bad faith, and raises several interesting and important questions that GBFF respectfully submits this Honorable Court should and must explore. Were the Forefront defendants and former defense counsel misleading this Honorable Court when

they represented, on at least three separate occasions, over several years in the course of this lawsuit, that diversity jurisdiction properly existed in this case?  Or are the Forefront defendants and their new counsel attempting to utterly mislead the Court now, in their recent filings?  Is the reason that former counsel no longer represents defendants  a convenient way for plaintiff to now disavow all of the representations of the existence of diversity jurisdiction by prior counsel?  Plaintiff respectfully submits that this Honorable Court must not countenance this recent and complete about-face reversal of position on the part of defendants.  The defendants, and current and former counsel, should be made to show cause why they should not be sanctioned, for suddenly turning around and claiming the complete opposite (i.e., that there is no diversity jurisdiction), from what they previously represented, several times, to be factually correct (i.e., that diversity jurisdiction exists).

Judicial estoppel is designed to protect the integrity of the judicial process, and precludes a party from taking a position in a case that is contrary to a prior position maintained in a case.  In the Third Circuit, a party seeking to invoke judicial estoppel must meet the three criteria enumerated under In re Kane, 628 F. 3d 631, 638 (3d Cir. 2010).  Pursuant to the Kane Court: "First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position in bad faith—i.e.*, with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct." *See,* Haines & Kibblehouse, Inc. v. Balfour Beatty Construction, Inc., 553 Fed. Appx. 246,

250, 2014 U.S. App. LEXIS 2031 (3d Cir. Pa. 2014) (dismissing removed complaint pursuant to judicial estoppels, after plaintiff attempted to gain an advantage by maintaining their prior 3rd Circuit appeal despite filing and proceeding to litigate a subsequently filed state court complaint); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F. 3d 314, 321 (3d Cir. 2003) (a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.").

GBFF has met the prerequisites for this Court to invoke judicial estoppel to prevent defendants from attacking diversity jurisdiction at this late stage of the instant case.

First, GBFF has shown that the Forefront defendants "have taken two positions that are irreconcilably inconsistent", and that the Court relied upon the prior position taken by defendants (that jurisdiction was proper based upon diversity), in making its decisions in the case.  Second, the Forefront defendants changed their position in bad faith.   Third, the relief sought (precluding defendants from challenging diversity jurisdiction) is tailored to address the harm from the Forefront defendants' inconsistent positions.

For over five years, the defendants led this Court, and GBFF, and opposing counsel, to believe that subject matter jurisdiction based upon diversity was not in dispute.  Defendants not only accepted GBFF's statements that diversity jurisdiction was proper for the claims asserted in the Complaint that was filed in 2011, but *defendants* themselves affirmatively represented to this Court, and to GBFF, and counsel, on at least three separate occasions, that subject matter jurisdiction was proper based upon diversity.

Now all of a sudden, in 2016, when faced with the entry of a $6.8 million Consent Judgment against Forefront Capital, because they defaulted in making the third Settlement payment of $150,000 to GBFF, defendants now do a complete about-face, by replacing their former counsel (who signed the pleadings on behalf of defendants containing admissions that diversity jurisdiction was proper), with replacement counsel (who argues the complete opposite, which would make defendants' prior representations about diversity jurisdiction untrue), and taking a completely inconsistent position with the one they consistently had taken throughout the five year history of this litigation.

Invoking the doctrine of judicial estoppel to preclude defendants from taking such a completely inconsistent position, and precluding them from asserting, contrary to their prior admissions in Court, that diversity jurisdiction is somehow is lacking, is precisely the type of situation that the doctrine of judicial estoppel was designed to remedy. Defendants are judicially estopped from claiming that diversity jurisdiction does not exist. In addition, sanctions should be entered against defendants in favor of plaintiffs; to the extent authorized by applicable law or Rule of Court, GBFF requests such an award of sanctions or that a hearing be scheduled on the issue of sanctions.

### D.   THE CONSENT JUDGMENT AGAINST FOREFRONT CAPITAL MARKETS SHOULD BE ENTERED

The only reason asserted by defendants in opposition to GBFF's Motion to Enter Consent Judgment Against Forefront Capital, is that the Court lacks subject matter jurisdiction because complete diversity is lacking. As addressed above, whether or not subject matter jurisdiction ever existed is a red herring at this late juncture as a binding Settlement Agreement has been signed and entered. The Settlement Agreement renders an inquiry of jurisdiction unnecessary and irrelevant. And since no other argument is

advanced in opposition by defendants, the entry of judgment at this juncture is entirely appropriate.

Moreover, even assuming jurisdiction must be re-established by plaintiffs at this late juncture, defendants' assertions are not correct, and jurisdiction is proper in this Court based upon diversity. *See*, Affidavit of Kimberly W. Block. In the alternative, defendants should be judicially estopped form attacking diversity jurisdiction at this late stage of the lawsuit, especially after (a) defendants did not challenge plaintiff's assertions that diversity jurisdiction existed, and (b) defendants affirmatively represented to the Court on at least three occasions that jurisdiction was proper in this Court based upon diversity jurisdiction. *See*, section B, *supra*.

Based upon the undisputed facts, GBFF is entitled to the entry of the Consent Judgment that was agreed upon as part of the Settlement Agreement. Forefront Capital was voluntarily removed from the $6.8 million Judgment that was initially entered on April 28, 2105, against all defendants, including Forefront Capital. A Consent Judgment against Forefront Capital was signed and held in escrow by plaintiff's counsel, to be returned (unfiled) to defense counsel if all of the Settlement payments were made, or to be released from escrow and filed with the Court upon an event of default. It is not contested that Forefront failed to make the third Settlement payment of $150,000 due on or before November 30, 2015. It is not contested that notice of default was given to forefront defendants and their counsel. It is not disputed that to date, the $150,000 Settlement payment has not been made to GBFF. Respectfully, GBFF's Motion to Enter Consent Judgment should be granted, and the agreed-upon Consent Judgment submitted with that Motion should be entered as the Judgment against Forefront Capital.

E.      **THE TD BANK SUBPOENA SHOULD BE QUASHED**

The only reason asserted by defendants in opposition to GBFF's Motion to Quash the TD Bank Subpoena is that the discovery sought from TD Bank is relevant and material to the issue of whether diversity jurisdiction existed back in December 2011 when the lawsuit was filed.  First and foremost, even if that assertion were true, the requested discovery is moot because plaintiffs are barred from challenging diversity by virtue of entry of the Settlement Agreement.

But even if diversity jurisdiction properly was in question, defendants still would not be entitled to the documents that they have requested from TD Bank.  Defendants claim that the documents they seek in the Subpoena they served on TD Bank "will plainly shed light on the question before the Court: who are, and who were in 2011, the ultimate partners of Plaintiff". *See*, defendants' response (docket no. 117), at p. 2.

However, the only documents requested in that TD Bank Subpoena are "true copies of all records in your custody, possession or control reflecting all payments to, or recipients of, funds, including checks (front and back), money orders, and/or wire transfer records, drawn against the account of plaintiff/counterclaimant GBForefront LP, at any time on or after May 26, 2015 through the date of compliance with this subpoena".  None of the requested documents even concern whether diversity jurisdiction existed back in December of 2011, when this lawsuit was started, and none of the documents are relevant or material to the issue of diversity jurisdiction.

All of the documents requested are for dates on or after May 26, 2015.  None of the documents requested from TD Bank are in the date range of the December 2011 filing of the Complaint.  None of the documents request information other than who paid whom

22

after May 26, 2015.  Contrary to defendants' assertions, documents showing who got what payments in 2015, are completely irrelevant to the question of whether there is diversity in this action because the only relevant time period is the time (December 2011) at which the Complaint was first filed. Freeport-McMoRan, Inc. v. K N Energy, Inc. 498 U.S. 426, 428 (1991). By way of example, if a payment was made by GBFF to undersigned counsel for attorney fees, surely the Forefront defendants cannot argue from such payment that undersigned counsel was a member of GBFF back in 2011, or that diversity jurisdiction did not exist in December 2011.  The Subpoena was served only to annoy and harass and impose an undue burden upon GBFF, and also seeks confidential financial information of GBFF that is not relevant or material to the issues in this case. GBFF is the *judgment creditor*; the Forefront defendants (*sans* Forefront Capital, for the time being at least) are the *judgment debtors*.  While it may be proper for *GBFF as the judgment creditor* to discover transfers of money by and among the *Forefront defendants who are judgment debtors*, the reverse situation is not true.

Respondents also fail to give any explanation whatsoever, or to address, the fact that the Subpoena they served contains the wrong docket number (13-cv-6901).

Simply put, the documents sought in the TD Bank Subpoena do not and will not provide relevant and material evidence of the December 2011 citizenship of GBFF when the Complaint was filed to start this lawsuit.  Because of that, as well as the other deficiencies in the Subpoena (e.g., the wrong docket number reflected on the Subpoena), as set forth in greater detail in GBFF"'s Motion to Quash Subpoena, plaintiff's Motion to Quash should be granted, and the TD Bank Subpoena quashed.

### F.  EVEN IF THERE WAS NO DIVERSITY, THE PROPER REMEDY IS NOT TO VACATE THE JUDGMENTS, BUT TO TRANSFER THE JUDGMENTS AND PROCEEDING TO PENNSYLVANIA STATE COURT

Even in the (very unlikely) event that this Court finds that defendants' claims have any merit, the proper remedy would *not* be to vacate the Judgments and start all over again. Instead, the remedy in such situation would be for the Court to transfer the Judgments and the proceeding to the Pennsylvania state court (the Court of Common Pleas), pursuant to 42 Pa. C.S.A. 5103(b).[1] However, because diversity jurisdiction was and is present in this case, this remedy is unnecessary.

### IV.  CONLUSION

For the reasons set forth herein, and in GBFF's Motion to Enter Consent Judgment Against Forefront Capital, and in GBFF's Motion to Quash TD Bank Subpoena, plaintiff GBForefront, LP respectfully requests that this Honorable Court enter its Order granting GBFF's Motions and denying the Forefront defendants Cross-Motions, and (10 entering the Consent Judgment against Forefront Capital, and (2) quashing the

---

[1] 42 Pa. C.S.A. 5103(b) states: **(1)** Subsection (a) shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this Commonwealth. In order to preserve a claim under Chapter 55 (relating to limitation of time), a litigant who timely commences an action or proceeding in any United States court for a district embracing any part of this Commonwealth is not required to commence a protective action in a court or before a magisterial district judge of this Commonwealth. Where a matter is filed in any United States court and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).

**(2)** Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or magisterial district judge may require that they be amended to conform to the practice in this Commonwealth. Section 5535(a)(2)(i) (relating to termination of prior matter) shall not be applicable to a matter transferred under this subsection.

TD Bank Subpoena, and granting plaintiff GBFF such other and further relief as the Court shall deem just. A form of Order accompanies this submission.

                                        Respectfully submitted,
                                        LIGHTMAN & MANOCHI
                                        BY: /s/ Gary P. Lightman
                                        GARY P. LIGHTMAN, ESQUIRE
                                        1520 Locust Street, 12th Floor
                                        Philadelphia, PA 19102
                                        Telephone: 215-545-3000; Telecopy: 3001
                                        garylightman@lightmanlaw.com
Dated: February 5, 2016                 Attorneys for plaintiff GBForefront, L.P.