UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GBFOREFRONT, L.P.** : | |
| : | CIVIL ACTION |
| **Plaintiff and Counterclaim Defendant,** : | |
| v. : | NO. 2:11-cv-07732-MSG |
| : | |
| **FOREFRONT MANAGEMENT** : | |
| **GROUP, LLC** : | |
| : | |
| **Defendant and Counterclaim Plaintiff,** : | |
| : | |
| and : | |
| : | |
| **FOREFRONT CAPITAL MANAGEMENT,** : | |
| **LLC, FOREFRONT CAPITAL MARKETS,** : | |
| **LLC and FOREFRONT ADVISOR, LLC** : | |
| : | |
| **Additional Defendants,** : | |

# PLAINTIFF'S POST-HEARING BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF CONSENT JUDGMENT, AND IN FURTHER OPPOSITION TO DEFENDANTS' <u>CROSS-MOTION TO VACATE THE JUDGMENTS</u>

Gary Lightman, Esquire
LIGHTMAN & MANOCHI
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Telephone: 215-545-3000; Telecopy: 3001
<u>garylightman@lightmanlaw.com</u>
Attorneys for plaintiff GBForefront, L.P.

GB FOREFRONT, L.P. (hereinafter "GBFF" or "GBForefront" or "Plaintiff"), respectfully submits this post-hearing brief as directed by the Court (a) in further support of Plaintiff's Motion to Enter Consent Judgment against Forefront Capital Markets, LLC (docket no. 169), and (b) in further opposition to the defendants' Cross-Motion (docket no. 177) to Vacate the April 28, 2015 Judgment (docket no. 161) and the May 27, 2015 Amended Judgment (docket no. 168) (collectively the "Judgments").

In sum, Defendants are seeking to renege on their obligations to pay Plaintiffs. Defendants' obligation to pay Plaintiffs arises out of a Settlement Agreement entered into between the parties to this action on May 22, 2015 (hereinafter the "Settlement Agreement"). See, Exhibit "P-1", marked at 5/25/16 hearing. A Settlement Agreement is nothing more than a contract and Courts universally treat them as such. Tedesco Mfg. Co. v. Honeywell Int'l, Inc., 127 F. App'x 50, 52 (3d Cir. 2005).

The $6.8 million Judgment that GBFF has of record against the Initial Forefront Judgment Defendants (docket no. 161), was a Judgment *offered and consented to by defendants*, pursuant to their Rule 68 Offer of Judgment made by defendants on April 14, 2015, and accepted by plaintiff GBFF on April 28, 2015 (docket no. 159). GBFF and the Defendants then negotiated a settlement. The terms of the Forbearance and Settlement Agreement and Conditional Release effective May 22, 2015 (the "Settlement Agreement") were meticulously negotiated between Plaintiff and Defendants, and bargained-for consideration was exchanged. Plaintiff agreed to accept less money to settle than they originally sought at the outset of the litigation, and Defendants were able to remove the $6.8 million Judgment initially entered against Forefront Capital Markets, Inc. ("Forefront Capital"), and all parties avoided further

litigation costs and uncertainty. The parties each signed the Settlement Agreement – and Defendants began making payments.

Upon these clear and undisputed facts, there is no question that a binding Contract exists between the parties to this litigation. It is clear that Defendants have simply changed their minds – which is not a defense to a valid Contract. In deciding the pending Motions, this Court should not lose sight of this most basic premise – what the Defendants are asking for is help in breaching a binding Contract; Defendants are seeking to avoid the terms of a binding Contract through judicial process. No amount of legal maneuvering should allow this Court to lose sight of this most basic premise.

### *DEFENDANTS HAVE BREACHED THE SETTLEMENT AGREEMENT, ENTITLING GBFF TO THE ENTRY OF THE CONSENT JUDGMENT*

The terms of the Settlement Agreement (*see*, Exhibit P-1) provide, in relevant part, as follows:

(a) The April 28, 2015 Judgment would be amended by consent, to remove Forefront Capital as an Initial Forefront Judgment Defendant (which was done, *see* docket nos. 165--168)[1]; and

(b) A Consent Judgment, that re-enters Judgment in favor of GBFF against Forefront Capital for $6.8 million, and that makes Forefront Capital individually, jointly and severally liable with the other Judgment defendants, was signed and held in escrow by plaintiff's counsel (the form of Consent Judgment is attached as Exhibit "A" to the Certification of

---

1. The negotiation for the removal of Forefront Capital as a named Judgment debtor is further evidence of the bargained for consideration supporting the Settlement Agreement.

plaintiff's counsel submitted with GBFF's Motion to Enter Consent Judgment Against Forefront Capital, and that Consent Judgment currently is the subject of GBFF's Motion); and

    (c)  Defendants would make periodic settlement payments to GBFF, commencing immediately, and continuing over a period of years, with incentive discounts for defendants to make an earlier lump-sum payment); and

    (d)  In the event of default, GBForefront is authorized under the Settlement Agreement to immediately file the Consent Judgment with this Court for entry in this lawsuit, to again obtain a Consent Judgment in favor of GBForefront against Forefront Capital for $6.8 million, plus interest from April 28, 2015, less any settlement payments made.

  There is no question that the Settlement Agreement has been breached. Defendants made the initial $200,000.00 payment required under the Settlement Agreement (when the Settlement was executed), and the first installment payment of $150,000.00 (required to be made by August 31, 2015). *See*, Exhibit P-1. Defendants were required to make the second payment of $150,000 on November 30, 2015, but failed to do so. *Id*. Further quarterly payments of $150,000.00 were due under the Settlement Agreement on February 28, 2016 and another on May 31, 2016. *Id.* None of the subsequent payments due under the Settlement Agreement have been made.

  The failure to make timely payments under the Settlement Agreement constitutes a breach of contract and entitles Plaintiff to file the entry of the Consent Judgment executed by Defendants.

### ***THERE IS A BINDING SETTLEMENT AGREEMENT THAT THE COURT CAN ENFORCE, IRRESPECTIVE OF WHETHER THE COURT INITIALLY HAD JURISDICTION OVER THE UNDERLYING MATTER***

  Defendants have breached the Settlement Agreement – this much is not in dispute. Defendants argue that the Settlement Agreement is invalid due to an alleged lack of subject

matter jurisdiction. However, whether this Court had subject matter jurisdiction over this case originally, when it was filed, is of no moment, as the Settlement Agreement entered into between the parties to this lawsuit renders the original litigation irrelevant. What is left of the underlying litigation is the Settlement Agreement; a Contract, nothing more. Jurisdiction cannot be challenged after a settlement agreement has been signed and partial performance has occurred.

The Blocks, who lived in New Jersey when this lawsuit first was filed in 2011, moved to South Carolina in August 2015, before defendants defaulted under the Settlement Agreement. This Court now has diversity jurisdiction to enter the Consent Judgment, pursuant to the terms of the Settlement Agreement, following defendants' undisputed payment defaults under that Contract. Because there currently is complete diversity (plaintiff is a citizen of Pennsylvania and South Carolina, and defendants are citizens of New York, New Jersey and Delaware), this Court has an independent basis to enforce the Settlement Agreement reached by the litigants in this case back in May, 2015. **This Court has discretion to enforce the settlement agreement, where an independent basis for jurisdiction exists, which is precisely the case here.** *See,* Jeandron v. Applebaum, No. CIV. A. 97-1358, 1998 WL 54438, at *2 (E.D. Pa. Jan. 28, 1998) (a district court may enforce a settlement agreement: (1) if the court expressly retained jurisdiction in the dismissal order; or (2) if the order incorporated the terms of the agreement; or (3) *if an independent basis for jurisdiction exists*).

Defendants' new claim, that diversity jurisdiction was lacking back in December 2011 when the lawsuit first was filed, is irrelevant. There is no need, nor any mechanism, for this Court to look beyond the terms of the Settlement Agreement and invalidate it based on a stale and irrelevant claim of a lack of jurisdiction in this case. The seminal case on this point,

followed by most of the Circuit Courts, including the Third Circuit, is <u>Meetings & Expositions, Inc. v. Tandy Corp.</u>, 490 F.2d 714 (2d Cir. 1974).

In the <u>Meetings & Expositions</u> case, the parties chose to settle the matter and entered into a settlement agreement. After one of the parties to the settlement failed to perform, the party in breach sought dismissal of the case for lack of jurisdiction. The Second Circuit reversed the dismissal of the case, and stated:

> "Indeed, execution of the stipulation rendered the previous controversy academic. A stipulation and agreement of settlement, entered in the action and 'so ordered' by the judge, is quite different from a general appearance. **Whether or not the court previously had personal jurisdiction over [defendant], the stipulation was a consent to the exercise of the court's power to compel compliance. … A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it**." <u>Meetings & Expositions</u>, *supra* (citations omitted).

The Third Circuit, citing to the <u>Meetings & Exposition</u> case, in <u>Cooper-Jarrett, Inc. v. Cent. Transp., Inc.</u>, 726 F.2d 93 (3d Cir. 1984), similarly holds that: "when parties stipulate to the settlement of an action they thereby 'consent to the exercise of the court's power to compel compliance.'" <u>Id</u>.

And the Third Circuit goes a bit further in <u>Fox v. Consol. Rail Corp.</u>, 739 F.2d 929 (3d Cir. 1984), stating: "It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. **Typically, the court does this without inquiring into, or requiring, an independent basis of subject matter jurisdiction for the enforcement/challenge suit.**" (citations omitted).

The Sixth Circuit, citing to the <u>Meetings & Exposition</u> case, is in accord with the Third Circuit: "**Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders**

6

**the prior controversy academic.**" Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir. 1976).

"**An agreement to settle a law suit, voluntarily entered into, is binding upon the parties**, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir.1970). "Where the parties have agreed on the essential terms of a [settlement agreement], the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." Mazzella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (1999) (citations omitted); *see* Thomas v. Univ. of Pa., No. 06–1916, 2007 WL 2891739, at *2 (E.D.Pa. Oct. 2, 2007) ("A settlement agreement is still binding even if ... a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." (quotation marks omitted). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced." *Id*.

Any assertion of a lack of jurisdiction is entirely irrelevant and rendered "academic" in light of the Settlement Agreement and defendants' breach thereof. This is especially so because this Court has an independent basis for jurisdiction in this case at the moment—GBFF's citizenship currently is Pennsylvania and South Carolina, and the citizenship of the defendants currently are New York, New Jersey and Delaware. *See*, cases cited, *supra*, in this section.

### *AT THE TIME THIS ACTION WAS COMMENCED, SUBJECT MATTER JURISDICTION EXISTED*

It is well settled that "[n]ew legal principles, even when applied retroactively, do not apply to cases [that are] already closed." Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 758 (1995). At the time that this case was filed, the U. S. Supreme Court case of Americold Realty Trust v. Conagra Foods, Inc., ___ U.S. ___, 136 S.Ct. 1012 (2016) had not been decided.

7

Indeed, the Americold decision, which resolves the disputed question of how to determine the citizenship of a real estate investment (business) trust (for purposes of determining whether diversity of citizenship exists), was only decided on March 7, 2016.

The most recent case on the matter in the Third Circuit, at the time of the filing of the Complaint, Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192 (3rd Cir. 2007), specifically dealt with business trusts. The question of how to determine the citizenship of a run-of-the-mill garden-variety testamentary trust (the type of trust at issue here) was not before the Emerald Court. Inasmuch as Emerald was not controlling law on the salient issue of determining citizenship of a non-business (i.e. testamentary trust), at the time of the filing of the complaint, there was ample legal support for the proposition that a testamentary trust's citizenship should be determined by examining the citizenship of the Trustee only. *See*, Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 465-66 (1980) ("for a traditional trust, therefore, there is no need to determine its membership" because "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes"); Mullins v. TestAmerica, Inc., 564 F.3d 386, 397 (5th Cir. 2009); Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 F. App'x 731, 732 (6th Cir. 2002); Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006); and Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). *See also*, Zoro Astrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C., 2016 U.S. App. LEXIS 8163, May 4, 2016 (4th Cir. 2016) (discussing Americold in an open case on appeal and holding that the charitable trust at issue was a citizen only of the states where its trustees resided).

When this lawsuit was commenced, GBFF had a general partner with a 1% ownership interest (GBForefront General L.L.C, a Pennsylvania limited liability company), and a 99% limited partner (WFP2, LP. A Pennsylvania limited partnership). *See*, Exhibit "A" attached to

plaintiff's Memorandum of Law filed in Opposition to defendants' Cross-Motion to Vacate) (docket no. 178). WFP2, LP was (and still is) a Pennsylvania limited partnership that was formed by Warren Weiner to provide for his grandchildren. The principals of WFP2, LP when this case was filed were Warren Weiner and a series of five (5) garden-variety Pennsylvania testamentary trusts, each one established by Warren Weiner for the benefit of each of his five (5) grandchildren. The Trustees of the children's Pennsylvania Trusts when this action was commenced were Warren Weiner and/or Penny Weiner, both Pennsylvania residents.[2] By contrast, at the time of the filing of the complaint, Defendants, by their own admissions, were citizens of New York, New Jersey and Delaware.

At the time of the filing of the Complaint, this Court would have had to weigh all of the authorities and approaches utilized by the various Circuits and determine which approach made the most sense (and then apply that approach to determining whether diversity existed in this case). Respectfully, at the time of the filing of the Complaint, the most sensible approach for the garden-variety testamentary trust involved in this case, would have been to assess diversity based upon the citizenship of the Trustee and not to look at the citizenship of beneficiaries (the Blocks' minor children).

Under the approaches utilized by several Courts at the time this case was filed, subject matter jurisdiction existed in this case. *See, cases cited supra.*

---

[2] Counsel for defendants have objected to plaintiff's use of P-2, a representative trust document for one of the five grandchildren (the Penny Weiner 11/26/04 Trust for Luke Ryan Block); at the request of the Court, plaintiff will submit P-2 to the Court *in camera* and under seal, under an appropriate confidentiality order.

### ***PRINCIPLES OF ESTOPPEL BAR DEFENDANTS' ATTEMPT TO UNDERMINE THE SETTLEMENT AGREEMENT AND TO CHANGE THEIR POSITION, TAKEN THROUGHOUT THIS CASE, THAT DIVERSITY JURISDICTION EXISTED***

Even assuming Defendants' argument—that this Court lacked subject matter jurisdiction over this case—has any merit, principles of estoppel bar Defendants from raising that claim now. Defendants not only conceded the existence of diversity jurisdiction, but Defendants also affirmatively relied upon, and represented several times to the Court, that diversity jurisdiction existed, in pursuing various counterclaims and a third-party action. Permitting Defendants to summarily walk away from their affirmative representations to this Court, that diversity existed in this case, and to cast aside the five years of litigation that the parties went though in this case, and the Judgments obtained *by consent of the defendants*, would be against the equities and deeply injurious to the Plaintiff.

During the five years that this case was pending before this Honorable Court, both Plaintiff and Defendants litigated the issues involved in the Complaint, the Counterclaim, and the Third Party Complaint. Defendants filed numerous motions in this Court. No one, at any time, contested subject matter jurisdiction. To the contrary, on at least three separate occasions, *defendants* themselves affirmatively represented to this Court, and to GBFF, and counsel, that subject matter jurisdiction existed based upon diversity.

When defendants filed their Counterclaim in October 2012 (docket no. 22, at para. 3), and again when defendants their Amended Answer and Counterclaim in February 2014 (docket no. 83, at para. 3), defendants affirmatively stated in each of their pleadings filed with this Court that jurisdiction for their Counterclaim was proper in this Court based upon diversity, thus admitting that diversity jurisdiction existed. On October 19, 2012, defendant Forefront Management Group, LLC ("FMG") filed a Third Party Complaint (docket no. 25), against Penny

10

Weiner and Geoffrey Block, personally, joining those individuals as third party defendants in this lawsuit. In paragraph 4 of their Third Party Complaint, *defendant* represented that jurisdiction was proper for their third party claims based upon diversity jurisdiction. It also should not be overlooked that when defendant asserted their Third Party Complaint against Geoffrey Block (whom the defendant identified as a New Jersey resident [and thus New Jersey citizen] at the time), defendants also knew (or should have known) that David Wasitowski, a part owner of defendant, also lived in and was a citizen of New Jersey at the same time. This highlights the disingenuous nature of the insinuation made by counsel for defendants during oral argument on May 25, that the defendants were essentially duped into believing that diversity existed. They affirmatively made claims in this lawsuit that defendants represented to the Court and to the parties were based upon diversity jurisdiction.

      Defendants led this Court (and GBForefront) to believe that jurisdiction based upon diversity was uncontested during the five years this case was pending. Defendants now challenge diversity jurisdiction for the first time, a year after the case was marked closed, and years after Defendants themselves affirmatively made claims in this lawsuit based upon diversity, and after Defendants made a Settlement Agreement with GBFF to resolve the open issues in this federal court lawsuit, and after Defendants made several payment under that Settlement Agreement, and after GBFF made a Motion to Enter the Consent Judgment following defendants' defaults under the Settlement Agreement. Respectfully, this Court should not permit Defendants to ignore their multiple prior admissions of diversity jurisdiction made over the five years that this case was litigated, so that they may now, and belatedly, raise a purported lack of jurisdiction, for the very first time, when all Plaintiff wants to do is to enforce what it bargained for under the Settlement Agreement (namely, to have the Consent Judgment again recorded

against Forefront Capital). Equity requires that Defendants' cross-motion be denied in their entirety, and that GBFF's Motion to Enter Consent Judgment be granted.

Judicial estoppel is designed to protect the integrity of the judicial process, and it precludes a party from taking a position in a case that is contrary to a prior position maintained in the case by that party. In the Third Circuit, a party seeking to invoke judicial estoppel must meet the three criteria enumerated under In re Kane, 628 F. 3d 631, 638 (3d Cir.2010).

Pursuant to the Kane Court: "First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad-faith i.e. with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *See also*, Haines &Kibblehouse, Inc. v. Balfour Beatty Construction, Inc., 553 Fed. Appx. 246, 250, 2014 U.S. App. LEXIS 2031 (3d Cir. Pa. 2014); Krystal Cadillac-Oldsmobile GMC Truck, Inc.v. Gen. Motors Corp., 337 F. 3d 314, 321 (3d Cir. 2003) (a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.").

The requirements for imposition of the doctrine of judicial estoppel are easily met in this case. Defendants are attempting to undo a Settlement Agreement (which they were in the processes of making the required payments thereunder), by now inventing a lack of subject matter jurisdiction, over five years after this case was first commenced, and a year after the case was closed.

Invoking the doctrine of judicial estoppel to preclude defendants from taking such a completely inconsistent position, and precluding them from asserting, contrary to their prior

admissions in Court, that diversity jurisdiction somehow is lacking, is precisely the type of situation that the doctrine of judicial estoppel was designed to address and remedy. Respectfully, Defendants should be judicially estopped from claiming that diversity jurisdiction does not exist.

### *DEFENDANTS CANNOT USE AMERICOLD TO VACATE THE FINAL JUDGMENTS*

Defendants rely upon Americold in seeking to vacate the $6.8 million Judgments they initially gave to GBForefront by consent, back in April 2015, pursuant to defendants' Rule 68 Offer of Judgment (docket no. 159). However, Americold only applies to open, non-final cases pending in the district courts or on appeal. Atl. Coast Demolition Recycling v. Bd. Of Chosen Feeholders, 112 F.3d 652, 672 (3d Cir. 1997); Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S. Ct. 2510 (1993). The instant case is not open and is final. The case has been closed since May 2015. A non-appealable and final judgment is in place, *with the consent of the defendants*. Therefore, the Americold decision does not retroactively apply to the instant dispute.

Defendants in effect are seeking to appeal from, and collaterally attack, the Judgment that they consented to, and did not appeal, long after the time to appeal the Judgment has passed and the Judgment has become final. Defendants' attempt to vacate the Judgment on this basis must be rejected. See Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977) (a motion to vacate judgment may not be used as a substitute for an appeal). Furthermore, even if Defendants could utilize Rule 60 to attack the Judgment and the Settlement Agreement that they agreed to in the first instance, "the societal interest in the finality of judgments," demands that Defendants' Cross Motion to Vacate the Judgment must be denied. Defendants' reliance upon Americold and "intervening developments in the law by themselves rarely

13

constitute the extraordinary circumstances required for relief under Rule 60." *See* <u>Reform Party of Allegheny County v. Allegheny County Dep't of Elections</u>, 174 F.3d 305, 311 (3d Cir. 1999).

### *AT MOST, THE INSTANT CASE SHOULD BE TRANSFERRED TO THE COURT OF COMMON PLEAS*

Defendants are not entitled to have the $6.8 million Judgment, that they voluntarily gave to GBFF pursuant to their Rule 68 Offer of Judgment, vacated, or frankly, to any other relief at this juncture. However, assuming this Court determines that it lacks jurisdiction over the current aspect of this case, dealing with enforcement of the Settlement, the appropriate remedy is <u>not</u> to vacate the Judgments and <u>not</u> to dismiss the case and force the litigants to start all over again, but instead to transfer the case to the Court of Common Pleas.

42 Pa.C.S. § 5103(b) provides that:

> Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).
>
> **(2)** Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or magisterial district judge may require that they be amended to conform to the practice in this Commonwealth.

Accordingly, should this Honorable Court determine that it lacks jurisdiction over this matter, Plaintiff respectfully requests that the Court enter its Order transferring the case to the Court of Common Pleas of Montgomery or Philadelphia County. <u>Walker v. Bohmueller</u>, U.S.D.C., E.D.PA., Civil No. 03-3750 (case transferred from E.D. PA. to C.C.P. Montg.)


(Dalzell, J.); Miller v. Bohmueller, (U.S.D.C., E.D.PA., Civil No. 03-6496 (case transferred from ED PA to CCP Montg.) (Dalzell, J.); *see also*, McLaughlin v. ArcoPolymers, Inc., 721 F.2d 426, 430-431 (3d Cir. 1983) (affirming use of 42 Pa.C.S. § 5103(b) for the transfer of case to state court); Moravian Sch. Advisory Bd. v.Rawlins, 70 F.3d 270, 279 (3d Cir. 1995) (urging the Virgin Islands to pass a statute similar to Pennsylvania's to allow for cases to continue in state court which lack federal jurisdictional requirements).

It cannot be ignored that plaintiff's entire argument for invalidating the Settlement Agreement is that jurisdiction did not exist in the main case (i.e. mutual mistake of the parties in thinking that diversity jurisdiction existed in this case, led to the settlement). However, inasmuch as the worst possible case for plaintiff is a transfer of the case to a State Court and not dismissal, the mutual mistake argument holds no water. The validity of the Settlement Agreement remains intact under any scenario. The Settlement Agreement was entered into not conditioned upon jurisdiction. Inasmuch as this Court presently has an independent basis for jurisdiction at this time, this Court may simply choose to rule upon the merits of the Settlement Agreement in lieu of transferring the case.

## *CONCLUSION*

Plaintiff's Motion to Enter Consent Judgment Against Forefront Capital, should be

granted, and the Consent Judgment should be entered in favor of GBFF against Forefront Capital. Defendants' Cross- Motion to Vacate the Judgments should be denied.

                        Respectfully submitted,

                        LIGHTMAN & MANOCHI

                        BY: /s/ Gary P. Lightman
                        GARY P. LIGHTMAN, ESQUIRE
                        1520 Locust Street, 12th Floor
                        Philadelphia, PA 19102
                        Telephone: 215-545-3000; Telecopy: 3001
                        garylightman@lightmanlaw.com
Dated: June 23, 2016          Attorneys for plaintiff GBForefront, L.P.