# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DIVISION DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GBFOREFRONT, L.P., | : | Case No. 2:11-cv-07732-MSG |
| | : | |
| Plaintiff(s), | : | Philadelphia, Pennsylvania |
| | : | May 25, 2016 |
| v. | : | 10:05 a.m. |
| | : | |
| FOREFRONT MANAGEMENT | : | |
| GROUP, LLC, et al., | : | |
| | : | |
| Defendant(s). | : | |

. . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MITCHELL S. GOLDBERG
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):         Gary P. Lightman, Esquire
                             Lightman, Manochi & Christensen
                             1520 Locust Street
                             12th Floor
                             Philadelphia, PA 19102

For the Defendant(s):        Sean Corgan, Esquire
                             Ricci, Tyrrell, Johnson & Grey
                             1515 Market Street
                             Suite 700
                             Philadelphia, PA 19102

                             Gary M. Fellner, Esquire
                             Porzio, Bromberg & Newman, PC
                             156 West 56th Street
                             Suite 803
                             New York, NY 10019

Court Recorder:              Stephen Sonnie
                             Clerk's Office
                             U.S. District Court

```
 1    Transcription Service:        Zanaras Reporting & Video
                                    1845 Walnut Street
 2                                  Suite 938
                                    Philadelphia, PA 19103
 3                                  (215) 790-7857

 4
      Proceedings recorded by electronic sound recording;
 5    transcript produced by transcription service.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Call to Order of the Court.)

2          THE COURT:  Good morning.

3          ALL:  Good morning, Your Honor.

4          THE COURT:  Good morning.  Please be seated.  This

5  is the matter of GBForefront, L.P. versus Forefront

6  Management Group, LLC.  It's Civil Action 11-7732.  Who's

7  here on behalf of Plaintiff GBForefront?

8          MR. LIGHTMAN:  Good morning, Your Honor.  May it

9  please this Court, Gary Lightman, Lightman & Manochi on

10 behalf of the Plaintiff, GBForefront.

11         THE COURT:  Good morning.  And for Defendant?

12         MR. CORGAN:  Good morning, Your Honor.  Sean Corgan

13 for the numerous Forefront entities as well as pro hac

14 counsel, Mr. Gary Fellner.

15         THE COURT:  Good morning.

16         MR. FELLNER:  Good morning, Your Honor.

17         THE COURT:  All right.  So we're here on, I think,

18 four matters, a Motion to Enter Consent Judgment filed by

19 GBForefront, a Motion to Quash Subpoena filed by GBForefront,

20 Cross Motion to Vacate Amended Judgment filed by, I believe,

21 Defense and Motion for a Protective Order and I think that's

22 filed by GBForefront.  This is an ongoing -- I'm not going to

23 try to capture the history but it's an ongoing dispute and

24 what I've always viewed as an overcomplicated --

25 unnecessarily overcomplicated case which really boils down to

```
 1   money loaned and money owed.  The four matters in front of me
 2   I think can be tabled until we figure out whether I have
 3   jurisdiction or not.  I know that Defense counsel has raised
 4   that now.  It is certainly at the end of the case, but at
 5   least there's some case law I think I need to consider Mr.
 6   Lightman that says that it doesn't really matter, and I'm not
 7   articulating rulings, I'm just saying the case law supports
 8   consideration of whether -- if I don't have jurisdiction,
 9   whether I could keep the case even though it's in its 13th
10   hour of the case.  So I think I directed the parties to be
11   prepared to present, of record, on the issue of jurisdiction
12   and citizenship of the parties, which isn't really that
13   simple of a matter.  And pursuant to that directive, we
14   received and I have reviewed what styled Plaintiff's Motion
15   for Protective Order and to Quash Discovery Requests and
16   submitted with that packet was a proposed stipulation --
17   styled stipulation of facts.
18        So what I want to do at the outset and then we can segue
19   off into other areas if need be, I want to deal with the
20   citizenship of the parties, and from what I understand, your
21   proposed stipulation, Mr. Lightman -- I mean, first of all,
22   as I understand it, the Plaintiff entity GBForefront is a
23   limited partnership, but I'm going to ask Plaintiff's counsel
24   to say whether he agrees to that fact or not.  Do you agree?
25             MR. LIGHTMAN:  That's correct, Your Honor.
```

Page 5

1          THE COURT:  Okay.  And then your stipulation -- and

2    it's my understanding next that the limited partnership is

3    made up of a series of trusts and -- is that accurate?

4          MR. LIGHTMAN:  Actually, GBForefront, LP is

5    comprised of two partners.  One is a general partner,

6    GBForefront General, LC that owns 1 percent and that's the

7    general partner.  The limited partner is an entity -- another

8    limited partnership called WFP2, LP and that owns 99 --

9          THE COURT:  W what, I'm sorry?

10         MR. LIGHTMAN:  W, F as in foxtrot, P as in Papa, the

11   number 2 comma LP, and that is the 99 percent limited partner

12   of GBForefront, LP.

13         THE COURT:  All right.  Where did I get the idea

14   that GBForefront was made up of trusts?

15         MR. LIGHTMAN:  I'm going to get to that.  Looking

16   first at the general partner, GBForefront General, LLC --

17         THE COURT:  The 1 percent?

18         MR. LIGHTMAN:  The 1 percent owner.  That was 100

19   percent owned by Warren Weiner when he was alive and now it's

20   owned by WFP2, LP.

21         THE COURT:  The 99 percent owner?

22         MR. LIGHTMAN:  Correct.  Turning to the limited

23   partner, WFP2, LP, the -- that limited partnership is

24   comprised of five -- if I may have a second, Your Honor.

25   That's comprised of five garden-type run-of-the-mill

Page 6

1    testamentary trusts that grandpop, Warren Weiner, established

2    for each of his five grandchildren, okay?

3           THE COURT:  Okay.

4           MR. LIGHTMAN:  When the lawsuit was brought, it's my

5    understanding that prior counsel Cozen & O'Connor brought it,

6    did a Navarro-type analysis and looked at the --

7           THE COURT:  Did a what analysis?

8           MR. LIGHTMAN:  A Navarro-type analysis that looked

9    to just the trustees of these testament --

10          THE COURT:  What's a Navarro analysis?

11          MR. LIGHTMAN:  The Supreme Court case in Navarro

12   said that where there's a trust involved -- this is pre

13   Americold.  Where there's a trust involved and the trustee's

14   the one who makes the decisions and manages the money and

15   everything, you look to the citizenship of the trust fund.

16          THE COURT:  Trust, right, okay.

17          MR. LIGHTMAN:  And each of the testamentary trusts,

18   the five grandchildren's trusts, Warren Weiner was the sole

19   trustee of the trust.

20          THE COURT:  Okay.

21          MR. LIGHTMAN:  For purposes of today, and the reason

22   why we filed the Motion to Quash the Discovery, the facts are

23   the facts, when the lawsuit was brought in December 20, 2011,

24   three of the beneficiaries, Kim Block and Jeff Block have

25   three children and those three children were beneficiaries of

Page 7

```
 1    three of the five testamentary trusts.  So if you have to

 2    apply Americold retroactive, --

 3              THE COURT:  And what's their citizenship?

 4              MR. LIGHTMAN:  They lived in New Jersey at the time

 5    the lawsuit was filed.

 6              THE COURT:  And you -- so you said this, but just to

 7    be clear, you agree to that?

 8              MR. LIGHTMAN:  We agree to --

 9              THE COURT:  So you have -- I'm just going to repeat

10    back so I can follow this because it's a little bit

11    convoluted.

12              MR. LIGHTMAN:  Sure.

13              THE COURT:  So you have 99 percent of GBForefront as

14    a limited partnership, WFP, there was a number --

15              MR. LIGHTMAN:  Two.

16              THE COURT:  Number 2 and that's made up of five

17    trusts.  Three out of the -- three of the five trusts, three

18    beneficiaries are citizens of New Jersey?

19              MR. LIGHTMAN:  Yes.

20              THE COURT:  Okay.

21              MR. LIGHTMAN:  They're the minor kids of Kim Block.

22              THE COURT:  And that was part of the stipulation?

23              MR. LIGHTMAN:  That was what we were prepared to --

24              THE COURT:  And then the remainder of the

25    stipulation, and I'm looking specifically at your paragraph
```

1   15 F, you propose that Wasitowski, if I'm pronouncing that

2   right.

3           MR. FELLNER:  Wasitowski, Your Honor.

4           THE COURT:  Yes, he's also a member of New Jersey

5   and I understand that he is a member of one of the -- one of

6   four of the Defendant entities.  Do you agree with that?  I'm

7   speaking to Mr. Lightman.

8           MR. LIGHTMAN:  It's my understanding that Mr.

9   Wasitowski is a part owner of Forefront Management Group,

10  LLC, who is a Defendant and counterclaim Plaintiff in this

11  case and David Wasitowski is also --

12          THE COURT:  What entity, Forefront what?

13          MR. LIGHTMAN:  Forefront Management Group, LLC.

14          THE COURT:  Okay.

15          MR. LIGHTMAN:  One of the main Defendants and also a

16  counterclaim Plaintiff and a third-party Plaintiff in this

17  lawsuit.

18          THE COURT:  Okay.  And you agree that he's a -- you

19  said a partner?

20          MR. LIGHTMAN:  He is a minority member, owner of the

21  LLC.

22          THE COURT:  Member.

23          MR. LIGHTMAN:  That's been represented to me.

24  Although, I've not gotten documentation to dispute that --

25          THE COURT:  Right.

1            MR. LIGHTMAN:  -- Mr. Fellner -- I have no reason to

2    dispute what Mr. Fellner has represented.

3            THE COURT:  Okay.

4            MR. LIGHTMAN:  We have no facts to the contrary.

5            THE COURT:  And importantly, you agree that he is a

6    citizen of New Jersey?

7            MR. LIGHTMAN:  He was a citizen of New Jersey.

8            THE COURT:  Okay.

9            MR. LIGHTMAN:  And apparently as of December 20th,

10   2011.

11           THE COURT:  Okay.  So then legally if we have New

12   Jersey resident on one side of the V and a Jersey resident on

13   the other side of the V, why do I have jurisdiction?

14           MR. LIGHTMAN:  It depends on three things.  First,

15   do you apply Americold retroactively.  Up until the Americold

16   decision in March as outlined in a Third Circuit case decided

17   here, Emerald Trust Realty, there were four approaches to

18   look at a trust.

19           THE COURT:  I'm going to interrupt you because --

20           MR. LIGHTMAN:  Okay.

21           THE COURT:  -- I'm going to tell you I have not dug

22   into these cases yet.  It seems like the way we're proceeding

23   is that we -- I think we've established a lot of the factual

24   record, I haven't heard from Defense yet, I'll obviously give

25   them an opportunity, it seems like this is going to be more

1    of a legal issue since we have established facts.  And I

2    haven't thoroughly read these cases, so don't assume that I

3    know what's in them yet.

4            MR. LIGHTMAN:  Okay.

5            THE COURT:  You're talking like I've -- I'm

6    proficient and then I'm telling you I'm not, so give me --

7            MR. LIGHTMAN:  I'm sorry.  I --

8            THE COURT:  Give me -- that's okay.  I'm just

9    telling you where I'm at and give me the overview and my plan

10   right now, although a lot could change, would be obviously to

11   go back and dig into these cases, so --

12           MR. LIGHTMAN:  I apologize.

13           THE COURT:  -- go ahead.

14           MR. LIGHTMAN:  That's --

15           THE COURT:  That's okay.  Don't apologize.

16           MR. LIGHTMAN:  Only because when I used to appear in

17   front of you in Bucks County, you were the most prepared

18   person in the room --

19           THE COURT:  Yes, okay.

20           MR. LIGHTMAN:  -- so --

21           THE COURT:  I don't think so, but go ahead.

22           MR. LIGHTMAN:  Before the Americold case, there was

23   a divergence of an opinion and if Your Honor really wants to

24   read some great background on this, I would recommend Your

25   Honor read the Emerald -- hold on one second.  Emerald

1   Investors Trust versus Gaunt Parsippany Partners and it's 492

2   F.3d 192.  It's a Third Circuit case.  And on pages 201 to

3   206 of that opinion, as the Americold case pointed out, there

4   was a -- there was confusion regarding the citizenship of a

5   trust.  And before Americold came out, some courts looked to

6   just the citizenship of the trustees, some looked at just the

7   citizenship of the beneficiaries, some looked to both, some

8   did analysis to determine what type of trust it was, and in a

9   business trust situation, for example, courts usually found

10  that the (indiscernible) of beneficiaries has as much say as

11  the trustees and all members had to be taken into account.

12  While in the case of, like, an ordinary trust (indiscernible)

13  trustees, testamentary trusts were regular trusts where the

14  trustees had control over the decisions, the assets,

15  distributions, they looked to just the trustees.

16       What we have in this case, the problem that I

17  respectfully submit and it's a difficult problem and I've

18  spent hours researching it and I was unsuccessful to find a

19  case here, is you have a case here where not only did the

20  Plaintiff say there was diversity in citizenship, but the

21  Defendants didn't dispute that.  They filed a Motion to

22  Dismiss for lack of personal jurisdiction, but they never

23  disputed diversity.  And more importantly, the Defendants

24  filed a counterclaim against GBForefront and they said we

25  have the jurisdiction to assert a counterclaim in this case

1   based upon diversity.  And really fundamental and I think the

2   biggest problem that all of us have is Forefront Management

3   Group, LLC, one of the Defendants, not only filed a

4   counterclaim, but Forefront Management Group, LLC also filed

5   a third-party Complaint.  They brought in Geoffrey Block

6   individually.

7            THE COURT:  That's been dismissed, right?

8            MR. LIGHTMAN:  No.  What happened was it was settled

9   and later voluntarily withdrawn by the parties, Geoffrey

10  Block and Forefront Management Group.  Before Forefront

11  Management Group, one of whose members were David Wasitowski,

12  brought a third-party Complaint in this case naming --

13  bringing Penny Weiner individually and Geoffrey Block

14  individually and Geoffrey Block at that time and when the

15  case started was a New Jersey resident, but yet, they claim

16  diversity existed.  So in this case, you have the Plaintiff

17  making affirmative claims based upon diversity, Defendants

18  not challenging it and Defendants making affirmative claims

19  based upon diversity, and then four years elapse and those

20  claims are adjudicated.  As Your Honor said, some of them are

21  dismissed.  There's a judgment entered against all four

22  Defendants and not as a result of any contested trial.  The

23  Defendants made a Rule 68 offer, Judge, and we accepted it,

24  GBForefront, and in April of 2015, there was a judgment for

25  6.8 million entered against all Defendants.  The case was

1    marked closed and in a month of heated settlement

2    negotiations, there was a settlement agreement reached.  And

3    the settlement agreement provided that by consent, the

4    parties would remove Forefront Capital Markets from the

5    judgment and then certain payments would occur under the

6    settlement agreement and if there was a breach, GBForefront

7    would be entitled by consent to get that judgment back.  And

8    I have a copy of the confidential settlement agreement if

9    Your Honor wants to review it.  I can hand it up --

10             THE COURT:  Yes, I do.

11             THE COURT:  -- for in camera inspection.  May I

12   approach?

13             THE COURT:  Yes.  As part of -- and again, I want to

14   hear from Defense counsel, but do you agree, Mr. Lightman

15   that this is the settlement agreement, that this should be

16   made part of the factual record as it relates to

17   jurisdiction?

18             MR. LIGHTMAN:  I have no problem if that's -- if the

19   confidentiality -- I would leave it up to the Defendants to

20   decide that.  If the Court feels that way, then obviously --

21             THE COURT:  I don't have an opinion one way or the

22   other.  I'm asking you do you believe that on the issue of

23   jurisdiction, it should be part of the factual record?

24             MR. LIGHTMAN:  Well, --

25             THE COURT:  I don't know yet.

1          MR. LIGHTMAN:  Okay.  We make a --

2          THE COURT:  I mean, I haven't read it.

3          MR. LIGHTMAN:  We make a separate argument.  And the

4     first argument we would make, before you even have to wade

5     through the jurisdiction diversity mess, you have a separate

6     independent ground to do what the Plaintiff wants.  That

7     document, that confidential forbearance and settlement

8     agreement, was a settlement agreement, it's a binding

9     enforceable contract reached between federal litigants that

10    settles a federal court lawsuit.  And I respectfully submit

11    that independent of any issue of jurisdiction, the Court has

12    the power to enforce a binding contract, a settlement

13    agreement, made by federal litigants to settle a federal

14    court lawsuit.  And we cited in --

15         THE COURT:  If I don't have juris -- I hear you, but

16    if I don't have jurisdiction over the parties to that

17    settlement agreement, if, it still hasn't been decided, the

18    if, how can I enforce the settlement agreement if I don't

19    have jurisdiction?

20         MR. LIGHTMAN:  Well, in order to say you don't have

21    jurisdiction, you have to first deal with the judicial

22    admissions made by the Defendants where they claim diversity

23    was present.  You have to deal with four years of --

24         THE COURT:  We'll call that, just for sake of

25    simplicity, your waiver argument, okay?

1          MR. LIGHTMAN:  That's either a waiver or slash

2     estoppel argument.  And I --

3          THE COURT:  My word, but I know what your argument

4     is.  You articulated it.

5          MR. LIGHTMAN:  Okay.  So you could say, and I

6     anticipate Mr. Fellner, the capable litigant that he is, will

7     stand up and say you can never waive a jurisdiction argument.

8     You -- it may not be waivable, but there may be instances

9     when you can't assert that.  And one of those instances is

10    where for four years you have not only accepted Plaintiff's

11    allegations --

12         THE COURT:  Yes.  You were very clear on that

13    argument.

14         MR. LIGHTMAN:  Okay.

15         THE COURT:  Not only four years, but the case may be

16    different, again, I haven't looked at the -- dug into this

17    yet, but not only is it a defense, it's an affirmative

18    lawsuit that they've filed based on what they're now saying

19    is faulty jurisdiction.  I get your argument.

20         MR. LIGHTMAN:  Okay.

21         THE COURT:  Separate -- are you saying a separate

22    argument is --

23         MR. LIGHTMAN:  Separate and apart from that.

24         THE COURT:  -- this?

25         MR. LIGHTMAN:  Separate and apart from that, if you

1   jump --

2            THE COURT:  Right.

3            MR. LIGHTMAN:  -- over the -- they've affirmatively

4   raised jurisdiction and they (indiscernible), if you jump

5   over the fact that the case was closed for over a year, if

6   you jump over the fact that they not only didn't challenge

7   jurisdiction but affirmatively raised it, and you also say

8   Americold, even though it's a business trust, I'm going to

9   apply that all members rule to an ordinary testamentary-type

10  trust, if all those things (indiscernible) and you apply

11  Americold retroactively, then I would have to agree with the

12  Court that if all those things happened, the Court doesn't

13  have jurisdiction to give GBForefront what it wants, namely,

14  to enter the consent that the judgment that Forefront Capital

15  gave us by consent and then we (indiscernible) took away as

16  part of the settlement agreement.

17           THE COURT:  Okay.

18           MR. LIGHTMAN:  But --

19           THE COURT:  So I'm going to say that, subject to

20  hearing whether there's an objection from Defense, the

21  settlement agreement we'll provisionally mark as P-1, we'll

22  make it part of the record, maybe depending on whether -- do

23  you object to that, by the way?

24           MR. FELLNER:  I don't think it's relevant, Your

25  Honor.

1          THE COURT:  Okay.  So we'll mark it P-1, it's

2     provisionally admitted.  I will hear your argument on that

3     and if I decide that your argument is right and it's not

4     relevant, then it will be excluded, okay, on the

5     jurisdictional issue.

6          MR. LIGHTMAN:  Thank you, Your Honor.

7          THE COURT:  So let's -- Steve, let's mark it P-1 and

8     let's make it part of the record.  Okay.  So go ahead.

9          MR. LIGHTMAN:  And let me just conclude.  I'm not

10    going to repeat everything I've put in it, but --

11         THE COURT:  Yes.

12         MR. LIGHTMAN:  -- think about what's at stake here.

13    This case is different than Americold, it's different than

14    Emerald Realty Trust, it's different from the Three Seminole,

15    the Supreme Court cases -- or Third Circuit case and the two

16    Supreme Court cases.  In those cases, one party was

17    contesting jurisdiction.  Here -- in none of the cases, and

18    I've not been able to find and I spent quite a bit of time

19    looking for it, I've not been able to find a case where both

20    the parties claim that there was jurisdiction, litigated, had

21    results, the case was closed and then later one of the

22    parties turns around and says, oh no, no diversity

23    jurisdiction, but think of the implications of that.  A few

24    months ago, Your Honor had a case involving a horse named

25    Blue, between Caitlin Grey, I forget the Defendant's name,

Page 18

1    and Your Honor made a ruling.  And that case --

2         THE COURT:  I think the horse's name was Lucky,

3    wasn't it, Steve.

4         MR. LIGHTMAN:  I thought it was Blue.

5         THE COURT:  Is it Lucky?

6         THE CLERK:  Yes, I believe so.

7         MR. LIGHTMAN:  Was it Lucky?

8         THE COURT:  Yes.

9         MR. LIGHTMAN:  Oh.

10        THE COURT:  Maybe it was Lucky Blue.  Go ahead.

11        MR. LIGHTMAN:  Because I was about to say are you

12   going to give Grey a new chance out of the blue and --

13   forgetting that --

14        THE COURT:  He can be Blue then if you want.

15        MR. LIGHTMAN:  Okay.  But does Caitlin Grey get a

16   chance to come back into this court and say oh, you ruled

17   against me.  I'm mistaken, wipe that all out and start all

18   over again because there really wasn't diversity.

19        THE COURT:  Yes.

20        MR. LIGHTMAN:  Think of all the cases that Your

21   Honor's heard --

22        THE COURT:  Your equity argue -- your equity

23   arguments are sound.

24        MR. LIGHTMAN:  Okay.

25        THE COURT:  I don't know if they're consistent with

1   what the law is, but we'll --

2           MR. LIGHTMAN:  So ready --

3           THE COURT:  -- find out.

4           MR. LIGHTMAN:  -- I'm going to be consistent with

5   the law.  I'm going to take off my Plaintiff's argument hat

6   and I'm going to pretend to be Judge Goldberg's law clerk.

7   What do you do in a situation like this?  And, again, it -- I

8   respectfully submit that four years of -- and I think, check

9   the Docket, this is one of the most --

10          THE COURT:  You don't have to remind me.

11          MR. LIGHTMAN:  As Your Honor said, I love that

12  phrase, I wrote it down, unnecessarily complicating what's

13  basically a collection case, okay?  But you can't throw away

14  four years of fighting and you can't throw away -- you can't

15  ignore the fact that the Defendants claimed diversity

16  jurisdiction existed and you can't ignore the fact that they

17  (indiscernible) and so what's the solution.  If Your Honor

18  truly thinks there's no jurisdiction here and Your Honor can

19  jump over all the hurdles that I mentioned, then the answer

20  is right -- written for Your Honor by the Pennsylvania

21  General Assembly, and that's Title 42, Section 5103(b), which

22  allows Your Honor in a case of an erroneously filed matter,

23  it says if an appeal or other matter's taken or brought in a

24  court or magisterial district which does not have

25  jurisdiction, you can transfer the case.  Well, first, 530 --

1    5103(a) says if there's a case that's brought or an appeal

2    that's brought in some court or magisterial district which

3    does not have jurisdiction of the appeal or other matter, the

4    court shall not quash the appeal or dismiss the matter, but

5    shall transfer the record to the proper tribunal of this

6    Commonwealth.

7        And then (b) says federal cases.  Subsection (a) shall

8    also --

9            THE COURT:  But if we have two Jersey citizens, it

10   says of this Commonwealth.  If I go through all of those

11   hoops, who do you want me to transfer it to?

12           MR. LIGHTMAN:  Montgomery County is where

13   GBForefront was based, where Warren Weiner was based,

14   transfer it to the Court of Common Pleas in Montgomery

15   County, Judge.

16           THE COURT:  Okay.

17           MR. LIGHTMAN:  And for precedent on that look to

18   what Judge Dalzell did in two cases that we brought on behalf

19   of Plaintiffs against him, it's Walker versus Bohmueller.

20           THE COURT:  We're going to give you a chance to put

21   all of this in writing, so you don't have to give us the

22   cites now.

23           MR. LIGHTMAN:  Okay.

24           THE COURT:  Just hold your thoughts for one second.

25   I want to ask Defense -- I want to ask you a couple of

1   questions.  You still have a judgment against three of the

2   four Defendant entities; is that accurate?

3           MR. LIGHTMAN:  Yes, on April 26th Your Honor --

4           THE COURT:  Yes.

5           MR. LIGHTMAN:  -- entered the Rule 68 offer of

6   judgment.

7           THE COURT:  And is the practical implication of that

8   in your motion to have a consent judgment against one of the

9   four, is that the three -- really you can't collect from the

10  other three?  Is that the practical implication?

11          MR. LIGHTMAN:  That is the practical -- that's what

12  we believe.

13          THE COURT:  Right.

14          MR. LIGHTMAN:  We haven't conducted any discovery

15  yet, but --

16          THE COURT:  Right.

17          MR. LIGHTMAN:  -- Forefront Capital Markets is the

18  broker dealer that they operate under, that's the only one

19  with real assets and which is why we ended up with the

20  settlement that you're going to pay and they actually made

21  two payments on it, so --

22          THE COURT:  Yes.  Okay.  Let me -- who's going to

23  speak for Defense?  And I'm fine if both of you speak, but

24  just not ping pong, okay?  And I forget who's who.

25          MR. FELLNER:  Gary Fellner.

1          THE COURT:  Mr. Fellner, a couple questions, then

2     you can have the floor.  Mr. Lightman made some factual --

3     very clear, in my opinion, factual concessions that are part

4     of this record in addition to P-1 subject to your relevancy

5     objection.  My suggestion, subject to your input, would be we

6     order the transcript, we take those factual -- I don't want

7     to call them admissions, but I think they are factual

8     agreements that Mr. Lightman made, perhaps you want to

9     supplement the record with some that Mr. Lightman would agree

10    to.  We order the transcript.  It seems to me this is a legal

11    issue and then I set up a briefing schedule, we have a record

12    and we -- I allow, you know, you both to submit briefs on the

13    jurisdictional issue.  Because there's cases Mr. Lightman's

14    citing that I need to read.  What do you think?

15         MR. FELLNER:  I think that the briefing has already

16    been done.  We have cited Third Circuit precedent that

17    clearly demonstrates that when you're talking about a trust

18    for diversity purposes, the Court must look at both the trust

19    beneficiaries as well as the trust.

20         THE COURT:  Okay.  So small --

21         MR. FELLNER:  We've also --

22         THE COURT:  Small thing.  If it wasn't done and

23    maybe I'm just being a little (indiscernible) compulsive

24    here, but it wasn't done in the context of an established

25    record that we're starting to build now.  So if you've

1   already briefed it, just turn -- you know, cut and paste it

2   and turn it -- after we have this factual record.

3            MR. FELLNER:  The problem that I have, Your Honor,

4   is -- and I appreciate the concessions that have been made

5   and I think those concessions were clear that we're talking

6   about citizenship on both sides of the V, being in New Jersey

7   at the time that the action was filed, and the only

8   Defendant, just so that the record is clear, in December of

9   2011 was Forefront Management Group, LLC.  These other

10  parties weren't joined until 2014 as additional Defendants.

11  So the only question that we're looking at is the members of

12  Forefront Management Group, LLC at the time in December of

13  2011, and Mr. Wasitowski, who's here today was clearly a

14  member of that Defendant LLC.  The problem that I have is the

15  Plaintiff's attorney has also been good enough to concede

16  that there are other trusts besides these three trusts where

17  the beneficiaries were from New Jersey.  We have never seen

18  any of the trust instruments.  So we have other questions

19  that have never been addressed.

20            THE COURT:  But if he's wrong on the law and his

21  waiver argument, my characterization, not his, but we all

22  know what we're talking about, his waiver argument is not

23  supported by the case law, you're left with a record where

24  you have Jersey residents on both sides of the V, why do you

25  need to see that information, that additional information?

1       MR. FELLNER:  I agree that the law would support the

2   conclusion that diversity was destroyed.

3       THE COURT:  I didn't say that.

4       MR. FELLNER:  Well, I would agree that the Plaintiff

5   from New Jersey and the Defendant from New Jersey certainly

6   supports the conclusion that diversity does not exist.

7       THE COURT:  I didn't say that either.  I'll restate

8   my question.  My question -- you're saying he's acknowledged

9   that one of the beneficiaries of the trust is from New

10  Jersey.

11      MR. FELLNER:  Three.

12      THE COURT:  Three, excuse me.  Three, and that

13  places Jersey residents on both sides of the V.  And now

14  you're saying but there's other trust information we don't

15  have, we --

16      MR. FELLNER:  Right.

17      THE COURT:  -- want that.  My question is if he's

18  wrong on the law and you're right and two Jersey residents on

19  both sides of the V defeats diversity and there's no

20  jurisdiction and his waiver argument doesn't hold water, why

21  do you need that other information?

22      MR. FELLNER:  I don't.

23      THE COURT:  That's my -- you don't?

24      MR. FELLNER:  I don't.

25      THE COURT:  Okay, you don't.  Okay.  So why don't we

Page 25

1    table that -- my suggestion would be doesn't it make sense to

2    table that and sort out the jurisdiction question first?

3              MR. FELLNER:  We can certainly do that, Your Honor.

4              THE COURT:  Okay.

5              MR. FELLNER:  I'm just raising the possibility,

6    because --

7              THE COURT:  Okay.

8              MR. FELLNER:  -- I am in the dark, that there may be

9    other parties.  For example, there may be trustees who are

10   from New York and we have other people at Forefront

11   Management Group, LLC, members --

12             THE COURT:  Yes.

13             MR. FELLNER:  -- from New York --

14             THE COURT:  Understood.

15             MR. FELLNER:  -- which also bodes for yet further

16   reasons why --

17             THE COURT:  Okay.  You reserve your right to pursue

18   -- if I find that there's jurisdiction and we're going to go

19   forward with the litigation of whether I'm going to enter

20   this consent judgment, you've reserved your right to come

21   back to me and say I want that information.

22             MR. FELLNER:  Thank you, Your Honor.

23             THE COURT:  Okay?

24             MR. FELLNER:  That's fine.

25             THE COURT:  So that aside, does my plan, does that

```
1   make sense to you?

2            MR. FELLNER:  It does.

3            THE COURT:  Okay.  So here's what -- that's what

4   we're going to do then.  Oh, before we set our schedule, are

5   there any facts that you believe need to be entered into the

6   record on jurisdiction that haven't been placed into the

7   record?  And your objection on the agreement as P-1 is noted

8   and held under advisement.

9            MR. FELLNER:  Based upon the admissions this morning

10  from Counsel that we have both sides of the parties being

11  from New Jersey, the answer is no.

12           THE COURT:  Okay.

13           MR. FELLNER:  I don't have anything further to add

14  to the (indiscernible).

15           THE COURT:  Okay.  So my suggestion then would be,

16  we'll order the -- Mr. Sonnie, we'll order the transcript.  I

17  really don't care whether it's simultaneous submissions.  I

18  guess it would be your burden because you're challenging

19  jurisdiction --

20           MR. FELLNER:  I don't believe that's correct, Your

21  Honor.  I -- and that was one of the points that I wanted to

22  make --

23           THE COURT:  Yes.

24           MR. FELLNER:  -- whenever I can have the floor --

25           THE COURT:  Go ahead.
```

1          MR. FELLNER:  -- if I may.  There's really two

2     things that I wanted to address and I think it boils down to

3     the law and the equities which have been discussed this

4     morning.  On the law side, it is the Plaintiff's burden to

5     demonstrate that this Court has diversity jurisdiction.  It

6     is not the Defendants burden to show otherwise.  In fact, the

7     case law that we've cited --

8          THE COURT:  No, you're right.  The burden

9     establishing federal jurisdiction rests with the party

10    asserting its existence.

11         MR. FELLNER:  Right.

12         THE COURT:  Agreed.

13         MR. FELLNER:  So -- and that is one of the reasons

14    that I addressed my argument a few moments ago that there are

15    other holes, if you will, that have not been yet established

16    by the Plaintiff.  But keeping that in reserve, it is the

17    Plaintiff's burden to demonstrate the diversity existed at

18    the time that the lawsuit was brought and the Plaintiff has

19    failed in that regard to show that diversity existed.  All of

20    the cases that we've cited, and I'm not going to beat a dead

21    horse, I know Your Honor will get to them, but they clearly

22    demonstrate from the Supreme Court of the United States,

23    Wisconsin versus Shack (ph), Kokkonen versus Guardian Life,

24    Arbaugh versus Y & H, Insured Corp of Ireland versus

25    Compagnie Des Bauxites.  All of these cases repeatedly

1   reaffirm the principle that if subject-matter jurisdiction

2   does not exist, the Complaint has to be dismissed.  That's

3   the end of it.  The Court is bestowed with the power to

4   address a case by the statute and if the statute has not been

5   satisfied, then the Court does not have the power, settlement

6   agreement or otherwise.

7        The fact of the matter is that the parties, both sides,

8   were mistaken in thinking that subject-matter jurisdiction

9   existed.  And the case law, those cases that I just cited,

10  also demonstrate that there is no such thing as waiver, there

11  is no such thing as consent.  Nothing that a party can do,

12  whether it's a counterclaim, a third -- nothing that they can

13  do or allege will give the Court the subject-matter

14  jurisdiction (indiscernible).

15            THE COURT:  How about an affirmative counterclaim?

16            MR. FELLNER:  It does not matter, Judge.

17            THE COURT:  Okay.  We'll look at that.

18            MR. FELLNER:  It does not matter.

19            THE COURT:  We'll look at it.

20            MR. FELLNER:  And the fact of the matter is, and

21  this kind of goes to my point about the equities here, the

22  Plaintiff is trying to insinuate that the Defendant was

23  completely asleep at the switch and just has awoken now and

24  is raising this for the very first time.  The truth of the

25  matter is that it was raised in discovery, this is in the

1   record in our papers, where interrogatories were propounded

2   to the Plaintiff to articulate all of the parties of the

3   Plaintiff, GBForefront, LP, and the response was it's not

4   relevant or they objected, it's not relevant to the issues in

5   the case.  And for whatever reason, the prior counsel for the

6   Defendant did not push it further.  He apparently was just

7   assured that the parties are from Pennsylvania.

8           THE COURT:  The prior counsel for the Defendant

9   speaks for their client.

10          MR. FELLNER:  But the part --

11          THE COURT:  Even though you're the new counsel.  We

12   have two new counsel, right?

13          MR. FELLNER:  That's correct.

14          THE COURT:  Yes.  His actions are binding and he was

15   content to settle the case.

16          MR. FELLNER:  But, Your Honor, again, it goes back

17   to objectively speaking, you have to look at was there

18   subject-matter jurisdiction at the time --

19          THE COURT:  Sure.

20          MR. FELLNER:  -- that the lawsuit was filed, and the

21   answer I think we've established today is no.  So --

22          THE COURT:  That's where I'm going to look at.

23          MR. FELLNER:  So discovery was certainly propounded

24   and Plaintiff threw up a brick wall and said we're not going

25   to give you the information.

1          THE COURT:  And your client said fine, let's settle

2     the case.

3          MR. FELLNER:  Right, under the mistaken belief that

4     jurisdiction must exist.

5          THE COURT:  Okay.

6          MR. FELLNER:  So we were retained and as soon as we

7     were retained, we brought the issue to the Plaintiff's

8     attention and we've been fighting for the last six months

9     saying that there's no jurisdiction and all we've been

10    getting is papers that have been submitted that say no,

11    diversity jurisdiction exists.  So we want the discovery.  We

12    want to see the documents that demonstrate that the Plaintiff

13    has --

14         THE COURT:  Yes, but why are you telling me all of

15    this?  Mr. Lightman, as you've said, has made some gracious

16    concessions.

17         MR. FELLNER:  And he has.  It's just a point of --

18    I'm trying to drive the point home, perhaps not successfully,

19    that the equities are also on the side of the Defense.

20         THE COURT:  Yes.

21         MR. FELLNER:  We have tried to raise this issue,

22    bring it to the floor very quickly and now that we finally

23    get the concession at least as to those three trust

24    beneficiaries that --

25         THE COURT:  But he submitted -- it's a small point,

1    I don't know, just enjoying our exchange, but he submitted a

2    proposed stipulation to you, so why are you saying -- which

3    he's now affirmed in court.  Why are you saying he's been

4    reluctant to concede these facts?

5            MR. FELLNER:  Well, first of all, if you look at the

6    stipulation, it says words like resident, but it doesn't say

7    citizen.  I just saw too many holes, Your Honor.

8            THE COURT:  Okay.  Fair enough.  All right.  So do

9    you -- one second.  Do you -- you are right, he has the

10   burden, do you want him to file his brief first based on this

11   record or do you want simultaneous briefs, and -- or do you

12   want to respond to him?

13           MR. FELLNER:  Respond to him.

14           THE COURT:  Okay.  How much time do you need to

15   submit your brief on the issue of jurisdiction?

16           MR. LIGHTMAN:  Three weeks, Your Honor.  Two weeks.

17           THE COURT:  It's funny.  You know, you ask for a

18   reasonable time, three weeks is more than reasonable and then

19   I don't say anything and you think I'm upset.

20           MR. LIGHTMAN:  (Indiscernible) only because in light

21   of what I have --

22           THE COURT:  If you had said four weeks, that would

23   have been fine, too.  So you can pick anywhere between two

24   and four.  Pick.

25           MR. LIGHTMAN:  How about three?

```
1                THE COURT:  Done.

2                MR. LIGHTMAN:  Let me --

3                THE COURT:  How much time -- excuse me.  How much

4     time do you want to respond?

5                MR. FELLNER:  Three.

6                THE COURT:  Three weeks, three weeks, agreed, we'll

7     put that in an order and to the extent that there are --

8     there's other evidence that you want to refer to, you may

9     only do that if it's agreed that that evidence can also be

10    made part of the record.  Don't refer to anything that's

11    outside of the record.  Now, I'll leave it up to the three of

12    you to determine fairly what that is.  If there's admissions

13    made -- someone said something in a pleading, that's, in my

14    view, part of the record, but don't bring in -- I don't want

15    to see affidavits from people that -- for instance,

16    affidavits that, you know, no one agrees are part of the

17    record, okay?

18                MR. LIGHTMAN:  So my --

19                THE COURT:  Yes, sir?

20                MR. LIGHTMAN:  Can I ask you to clarify

21    (indiscernible).  If I want to -- what I was going to propose

22    to Mr. Fellner, there's obviously not very good feelings

23    between our respective clients.

24                THE COURT:  Right.

25                MR. LIGHTMAN:  But opposing counsel has a great
```

Page 33

1    first name and we've gotten along swimmingly so far, so what

2    I would recommend is I'm willing to share the trust

3    information with him in camera for his eyes to show him --

4              THE COURT:  Whatever --

5              MR. LIGHTMAN:  -- that there are no New York

6    trustees and my question --

7              THE COURT:  Whatever you two agree on is fine with

8    me.

9              MR. LIGHTMAN:  Okay.

10             THE COURT:  You don't need my blessing.  That's

11   fine.

12             MR. LIGHTMAN:  My question for clarification, if I

13   -- if, for example, I want to attach one of the testamentary

14   trusts as an exhibit and don't mind it becomes part of the

15   record, then I can refer to that in my argument?

16             THE COURT:  If, and only if, Defense counsel agrees

17   that it can be part of the record.

18             MR. LIGHTMAN:  Well, how do I -- can I make one of

19   the trusts part of the record now?

20             THE COURT:  Do you object?

21             MR. FELLNER:  I haven't seen it.

22             THE COURT:  Okay.  So work that out.

23             MR. LIGHTMAN:  Okay.

24             THE COURT:  All right.

25             MR. LIGHTMAN:  I have a copy for the Court and I'll

1    e-mail Mr. Fellner a copy of (indiscernible).

2           THE COURT:  And listen, we have three weeks and --

3    what did I say, three and three?

4           MR. FELLNER:  Three and three.

5           THE COURT:  Three and three.  We have three weeks

6    and three weeks.  Counsel seem reasonable.  I agree their

7    clients have been unreasonable.  If there -- in the first

8    instance, there is an additional exhibit that's not part of

9    the record and you can't agree that it will be made part of

10   the record and either side believes it's very important and

11   you want me to rule whether it's relevant to the issue that

12   I'm going to decide, that is, jurisdiction, notify me by

13   letter and I'll get you on the phone and I will make a ruling

14   as to whether that additional evidence should be included,

15   but you've got to do that before the three weeks, okay?  So

16   work it out with him.  If you can't, let me know and I'll

17   rule, okay?

18          MR. LIGHTMAN:  Well, I'd like to -- can I hand this

19   up as P-2 and then e-mail you a copy.  My apologies for not

20   bring an extra copy.

21          THE COURT:  Give it to him later.

22          MR. LIGHTMAN:  Okay.

23          THE COURT:  Give it to him now when I leave the

24   bench and maybe he'll -- I predict he's going to agree.  Or

25   another solution, I'll leave it up to you two, would be to

1   say I want this made part of the record, Plaintiff, for

2   instance, but I note, Judge, that you shouldn't -- you still

3   have to decide whether to consider it because the Defense

4   doesn't believe it's relevant.  And in your submission, we

5   could do it this way, too, you could say don't consider it,

6   exclude it in your decision, it's not relevant and I can

7   decide it that way.  I'll let you two work that out, but I'll

8   make myself available if you think a ruling needs to be made

9   as to whether a piece of evidence is admissible or not.  Just

10  let me know, I'll get you on the phone.

11          MR. FELLNER:  I will.  Thank you.

12          MR. LIGHTMAN:  May I just say one thing before you

13  adjourn?

14          THE COURT:  Yes.

15          MR. LIGHTMAN:  Mr. Fellner said in his argument that

16  his client was under the mistaken belief that jurisdiction

17  exists.  I am troubled by that only because if you read

18  Defendant Forefront Management Group, LLC's third-party

19  Complaint, -- let me back up.  The whole basis of his claim

20  here today is that Forefront Management Group, LLC, one of

21  the members of that is David Wasitowski, who's a New Jersey

22  resident and one of the members of the Plaintiff group of

23  entities are these three grandchildren who are New Jersey

24  citizens and residents and that destroys diversity.

25          THE COURT:  I think he said -- when he said mistaken

1   belief, I think he was referring not to his clients, but to

2   prior counsel.

3           MR. LIGHTMAN:  I understand.  But if you look at the

4   document 25 filed October 19, 2012, that's a third-party

5   Complaint filed by Defendant Management -- Forefront

6   Management Group, LLC.  And they say in their third-party

7   Complaint in paragraph 3, third-party Defendant Geoffrey

8   Block is a citizen of the State of New Jersey and they give

9   his Franklin Lakes, New Jersey address.  At the time, counsel

10  for Defendants (indiscernible) that, they knew that Geoffrey

11  Block was a citizen of New Jersey.

12          THE COURT:  Yes.

13          MR. LIGHTMAN:  They knew that David Wasitowski was a

14  member of the person making this third-party Complaint --

15          THE COURT:  Point all of that out in your

16  submission.  I get it.

17          MR. LIGHTMAN:  I will.  Okay.

18          THE COURT:  I hear your argument.  And thank you,

19  counsel, for being so reasonable in agreeing to a reasonable

20  solution to try to sort this out.  I didn't think it would go

21  this well frankly.

22          MR. LIGHTMAN:  Thank you, Your Honor.

23          THE COURT:  All right.  Thank you.

24          MR. FELLNER:  Thank you, Your Honor.

25          THE COURT:  One other thing, have you folks been

```
 1   back and forth to Judge Strawbridge at all for mediation?

 2              UNIDENTIFIED SPEAKER:  No.

 3              THE COURT:  No?  I think I tried to take

 4   (indiscernible) settlement -- yes.

 5              UNIDENTIFIED SPEAKER:  I would love --

 6              THE COURT:  He's always -- we're not putting this

 7   briefing schedule off, but he's always available if both

 8   sides agree to try to sort this out.  He's a master settler,

 9   so, again, just call my law clerk and if both sides agree and

10   say could you get us in front of Judge Strawbridge, the

11   answer will be yes.

12              MR. LIGHTMAN:  Okay.  One other question.  Are we

13   going to split the cost of the transcript?  No one ever

14   covered that.  I guess (indiscernible) objection.

15              MR. FELLNER:  No objection.

16              MR. LIGHTMAN:  Okay.  Thank you, Your Honor.

17       (Court adjourned at 10:48 a.m.)

18                        CERTIFICATE

19       I certify that the foregoing is a correct transcript from the

20   electronic sound recording of the proceedings in the above-entitled

21   matter.

22

23    /s/April J. Foga                    June 20, 2016

24   April J. Foga, CET, CCR, CRCR

25
```