IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GBFOREFRONT, L.P. : | | CIVIL ACTION |
|         Plaintiff, : | | |
| : | | |
| v. : | | No. 11-7732 |
| : | | |
| FOREFRONT MANAGEMENT : | | |
| GROUP, LLC, et al. : | | |
|         Defendants. : | | |
| : | | |

Goldberg, J.                                                                                    September 21, 2016

### Memorandum Opinion

After four years of contentious litigation, GBForefront, L.P. ("GBForefront"), the plaintiff in this relatively straight-forward breach of contract action, accepted an offer of judgment made by Defendants. Pursuant to that agreement on May 27, 2015, I entered a final judgment and the case was closed on the court's docket. Defendants now argue that diversity of citizenship did not exist when the Complaint was initially filed and that the final judgment should be vacated.

Presently before me are competing motions, the resolution of which depend on whether this Court has subject matter jurisdiction, an issue never previously raised. Although this case was resolved in what appeared to be an equitable settlement, I am compelled to conclude that the judgment must be vacated and the case dismissed because at the time the Complaint was filed both Plaintiff and one Defendant were citizens of New Jersey.

**I.       FACTUAL BACKGROUND**

Beginning in early 2010, Third-Party Defendant Geoffrey Block and non-party Renee Noto were employed by Defendant Forefront Management Group, LLC ("FMG"). FMG undertook to raise funds through the sale of promissory notes to its employees and family

1

members of employees. Noto, her father Lucio Noto, and Block's father-in-law, Warren Weiner, were among those who agreed to purchase notes.

The purchase agreement appointed Weiner as "Collateral Agent," with the power to take certain actions and perform duties on behalf of all the purchasers. Weiner formed Plaintiff GBForefront for the purpose of purchasing and holding his note. GBForefront purchased a $2,500,000 note from FMG. Renee and Lucio Noto purchased notes for $275,000 and $500,000 respectively.

In May 2011, GBForefront allegedly discovered, through correspondence from FMG, that FMG had violated a number of provisions contained in the purchase agreement. Consequently, GBForefront declared FMG in default and demanded immediate repayment.

## II. RELEVANT PROCEDURAL HISTORY

On December 20, 2011, GBForefront initiated this action against FMG for breach of contract and unjust enrichment, seeking to recover on its own note and, as lead purchaser, on the notes of the non-party note holders.

On October 19, 2012, FMG filed counterclaims against GBForefront, as well as a third-party complaint against Block and the executrix of Weiner's estate alleging that Block and Weiner conspired to induce FMG into admitting that it had defaulted on the agreement.[1]

On December 27, 2013, GBForefront's motion to amend its complaint to add three additional entities as defendants was granted. These entities, which were connected to FMG, are: Forefront Capital Management ("FCM"), LLC, Forefront Capital Markets, LLC and Forefront Advisory, LLC.

---

[1] The claims against the Estate of Warren Weiner and Geoffrey Block were dismissed by agreement on April 9, 2015.

After years of litigation, GBForefront filed an acceptance of Defendants' offer of judgment pursuant to Federal Rule of Civil Procedure 68 on April 28, 2015. Therein, GBForefront accepted Defendants' offer to enter a $6.8 million judgment against <u>all four</u> Forefront entities. Accordingly, I entered judgment in the amount of $6.8 million against all four Forefront entities on April 28, 2015.

Somewhat inexplicably, on May 26, 2015, the parties filed a joint motion to amend the judgment whereby they sought to remove FCM from the judgment "in order to effectuate a Settlement Agreement between plaintiff and all defendants." (Joint Mot. to Am. p. 1.) The parties explained that the removal of FCM "is without prejudice to Plaintiff's right to again obtain a judgment (similar to the original Judgment) against FCM in the event of a default under the Settlement Agreement." (<u>Id.</u> at 2.) I granted the motion to amend and an amended judgment omitting FCM was entered on May 27, 2015.

On December 18, 2015, GBForefront filed a "Motion to Enter Consent Judgment against Defendant Forefront Capital Markets LLC" (Doc. No. 169). Therein, GBForefront alleged that the terms of the Settlement Agreement referenced in the May 26, 2015 motion to amend the judgment required "certain Forefront" entities to make monthly periodic payments. According to GBForefront, "Forefront"[2] made the initial $200,000 payment and the first instalment payment of $150,000 but failed to pay the next installment by the November 30, 2015 deadline. As such, GBForefront requested that a consent judgment be entered against all four Forefront entities pursuant to the terms on the Settlement Agreement.

On December 21, 2015, new counsel entered their appearance on behalf of Defendants. On January 22, 2016, Defendants responded in opposition to GBForefront's motion to enter the

---

[2] Based on its unexplained use of the generic moniker "Forefront," it is unclear which entities GBForefront is referencing.

consent judgment and also filed a cross-motion to vacate the May 27, 2015 amended judgment. Therein, Defendants state that, upon being retained, new counsel observed that GBForefront had failed to sufficiently plead diversity of citizenship jurisdiction in the Complaint. Specifically, Defendants note that GBForefront never alleged the citizenship of the members of the LLC defendant entities.

According to Defendants, in addition to this pleading defect, complete diversity never existed in this case. Defendants posit that GBForefront was a citizen of New Jersey and Florida and that David Wasitowski, a managing member of FMG, was also a citizen of New Jersey. As such, Defendants assert that subject matter jurisdiction is lacking, the judgment should be vacated and the case dismissed.

On May 25, 2016, a hearing was held so that the parties could develop a record on the issue of subject matter jurisdiction. There, GBForefront and Defendants agreed to the following factual statements regarding the parties' citizenship:

- When the Complaint was filed in December 2011, GBForefront consisted of one general partner and one limited partner. (Hr'g Tr. 5:4-8.)

- At the time the Complaint was filed, GBForefront's general partner was GBForefront General, LLC. (Hr'g Tr. 5:5-8.)

- At the time Complaint was filed, GBForefront's limited partner was WFP2, LP. (Hr'g Tr. 5:7-12.)

- At the time the Complaint was filed, WFP2, LP was comprised of five trusts. Each trust had one beneficiary. The beneficiaries of three of the trusts were citizens of New Jersey. (Hr'g Tr. 5:22-6:3, 6:21-7:5, 7:16-19.)[3]

---

[3] Over Defendants' objection, GBForefront has attempted to supplement this stipulated record with a "representative trust document for one of the five grandchildren" which demonstrates that the trustees of the grandchildren's trusts are Warren Weiner and/or Penny Weiner. (Pl.'s Post-Hr'g Br. p. 9.) According to GBForefront, both are "Pennsylvania residents." (Id.)

I note that the touchstone of diversity jurisdiction is citizenship and not residency. McNair v. Synapse Group Inc., 672 F.3d 213 (3d Cir. 2012) (allegations that parties are residents of a

- When the Complaint was filed, David Wasitowski was a member of FMG and a citizen of New Jersey. (Hr'g Tr. 8:20-21; 7:24-8:7; 9:5-7.)

Following the hearing, the parties submitted additional briefing. The issue is now ripe for disposition.

### III.    GENERAL LAW GOVERNING SUBJECT MATTER JURISDICTION

The burden of establishing federal jurisdiction rests with the party asserting its existence. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006). A district court has to first determine "whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014).

In reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006). The plaintiff must prove factual issues by a preponderance of the evidence.

A facial attack calls for a district court to apply the same standard of review it would use in "considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Aichele, 757 F.3d at 358.

The jurisdiction to hear cases in diversity arises under 28 U.S.C. § 1332(a), which provides that district courts "have original jurisdiction of all civil actions where the matter in

---

particular state, as opposed to 'citizens' or 'domiciliaries' of those states, are inadequate to allege jurisdiction by diversity). That said, I need not resolve Defendants' objection to this exhibit because, for the reasons explained below, I conclude that diversity is lacking and the citizenship of the trustees' would not change that outcome.

5

controversy exceeds the sum or value of $75,000, exclusive of interest and, and is between . . . citizens of different States." Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010 (citing Exxon Mobil Corp. v. Allapattah Svcs. Inc., 545 U.S. 546 (2005)). "The key inquiry in establishing diversity is thus the 'citizenship' of each party to the action." Zambelli Fireworks, 592 F.3d at 419.

"A natural person is deemed to be a citizen of the state where he is domiciled. A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. And a partnership, as an unincorporated entity, takes on the citizenship of each of its partners." Id. (internal citations omitted). "Accordingly, the citizenship of an LLC is determined by the citizenship of its members. For complete diversity to exist, all of the LLC's members must be diverse from all parties on the opposing side." Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (internal citations omitted).

"Depending on the membership structure of the LLC, this inquiry can become quite complicated. '[A]s with partnerships, where an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC.'" Id. at 105 n.16 (quoting Zambelli, 592 F.3d at 420).

The parties disagree as to the appropriate test for determining the citizenship of a trust. I will address this dispute below.

### IV. DISCUSSION

As a threshold issue, I conclude that the present challenge to the Court's subject matter jurisdiction constitutes a facial attack. At the hearing held on this issue, the parties agreed to a

stipulated set of facts as outlined above. The essence of the remaining dispute involves the appropriate test for determining the citizenship of a trust and whether the stipulated facts satisfy that test for diversity jurisdiction. In other words, the challenge at issue largely turns on questions of law. As this constitutes a facial attack, I will apply the corresponding standards.

### a. Diversity of Citizenship

The parties have stipulated that David Wasitowski, a member of the original defendant, FMG, was a citizen of New Jersey at the time the Complaint was filed. Therefore, if GBForefront is also deemed to have been a citizen of New Jersey at the time the Complaint was filed, complete diversity was lacking.

GBForefront, a limited liability partnership, was comprised of one general and one limited partner. Its limited partner, WFP2, LP, in turn, was comprised of five trusts, each with one beneficiary. The parties have stipulated that three of the beneficiaries were citizens of New Jersey. The parties, however, disagree as to whether the citizenship of the five trusts is determined with reference to the citizenship of the trustees and beneficiaries or the trustees alone. If the citizenship of the beneficiaries is considered, complete diversity did not exist at the time the Complaint was filed.

According to GBForefront, "at the time of the filing of the complaint," the "salient issue of determining citizenship of a non-business (i.e. testamentary trust)" was governed by Navarro Savings Association v. Lee, 446 U.S. 458 (1980). GBForefront urges that under Navarro only the trustee's citizenship is relevant and, therefore, the citizenship of the trusts' beneficiaries is irrelevant.

Defendants respond that Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012 (Mar. 7, 2016), which is the United States Supreme Court's most recent pronouncement on the

citizenship of a trust, controls because there is a presumption that a court applies the law prevailing at the time it renders its decision. See Bradley v. Sch. Bd., 416 U.S. 696, 711 (1974) ("a court is to apply the law in effect at the time it renders its decision"). Defendants argue that, under Americold, a trust's citizenship is determined with reference to both its trustees and its beneficiaries. See Americold, 136 S. Ct. at 1015-16.

In Navarro, the Supreme Court analyzed under what circumstances the trustees of a trust could bring an action in their own names. Id. at 465–66. In that case, eight individual trustees of a business trust, suing in their own names, brought a breach of contract action. 446 U.S. at 459–60. The defendants challenged subject matter jurisdiction arguing that the trust's beneficial shareholders, not the trustees, were the real parties to the controversy and, as such, their citizenship should control the jurisdictional question. The question presented to the Supreme Court was whether "trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders." Id. at 458.

The Court considered the role of the trustees and the beneficial shareholders with respect to the particular trust at issue. Under the declaration of trust, the trustees had exclusive authority over the trust property. Id. at 459. Moreover, the declaration of trust "authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." Id. at 464. In contrast, the beneficial shareholders did not have any such authority. Id.

Given these facts, the Supreme Court concluded that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," and "[t]he trustees in this case

have such powers." Id. at 464. The Court concluded that "trustees who meet this standard [may] sue in their own right, without regard to the citizenship of the trust beneficiaries." Id. at 465–66.

Ten years later, in Carden v. Arkoma Associates, 494 U.S. 185 (1990), the Supreme Court clarified the parameters of the rule established in Navarro. In Carden, a limited partnership brought a breach of contract claim in the district court on the basis of diversity jurisdiction. The partnership argued that its citizenship should be determined with reference to the citizenship of its general partner and not its limited partners. Id. at 186-87, 195-96.

The Supreme Court disagreed and held that "diversity jurisdiction in a suit by or against the ["an artificial entity"] depends on the citizenship of 'all the members.'" Id. at 195. In arriving at this "all-members" rule, the Court distinguished Navarro stating that "Navarro had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." Id. at 192-93. The Supreme Court further explained that Navarro involved the "quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." Id. at 191.

The United States Court of Appeals for the Third Circuit surveyed Navarro and Carden and subsequent circuit court cases applying their holdings in Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192 (3d Cir. 2007). After an exhaustive analysis, the Third Circuit "reaffirm[ed]" the rule that it had adopted nearly thirty years earlier that "the citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust." Emerald Investors Trust, 492 F.3d at 205.[4]

---

[4] GBForefront argues that Emerald is "not controlling law on the salient issue" because it "specifically dealt" with "business trusts" and not the "run-of-the-mill garden-variety testamentary trust . . . at issue here." (Pl.'s Post-Hr'g Br. p. 8.)

9

In <u>Americold</u>, he case relied upon by Defendants, the Supreme Court held that for purposes of diversity jurisdiction, a "real estate investment trust" possessed the citizenship of its trustees and its shareholders. <u>Americold Realty</u>, 136 S. Ct. at 1015-16. The Supreme Court rejected the argument that under <u>Navarro</u>, a trust possesses the citizenship of its trustees alone, stating:

> As we have reminded litigants before, however, "<u>Navarro</u> had nothing to do with the citizenship of [a] 'trust.'" <u>Carden</u>, 494 U.S., at 192–193, 110 S.Ct. 1015. Rather, Navarro reaffirmed a separate rule that when a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. 446 U.S., at 465, 100 S.Ct. 1779. This rule coexists with our discussion above that when an artificial entity is sued in its name, it takes the citizenship of each of its members.

<u>Americold</u>, 136 S. Ct. at 1016.

Here, unlike in <u>Navarro</u>, a limited partnership, not a trustee, instituted the lawsuit and there is no dispute as to whether GBForefront is the real party interest. Rather, the relevant question is how to determine the citizenship of the trusts which comprised WFP2, LP, a member of GBForefront. As noted above, the Supreme Court has repeatedly made clear that <u>Navarro</u> "ha[s] nothing to do with" the test for determining the citizenship of a trust. See <u>Carden</u>, 494 U.S. at 191-92; <u>Americold</u>, 136 S. Ct. at 1016. Therefore, contrary to GBForefront's assertion, it is clear that <u>Navarro</u> is inapplicable to the issue currently before me.

The law has remained unchanged since the filing of the Complaint in 2011. As such, I conclude that, in determining the citizenship of a trust for diversity purposes, the citizenship of both trustees and beneficiaries control.

---

However, in <u>Emerald</u>, the Third Circuit stated that its "research [had] not led [it] to conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship for diversity of citizenship jurisdictional purposes." <u>Emerald</u>, 492 F.3d at 199 n.10. As such, it explicitly declined to "distinguish between business trusts and express trusts for citizenship purposes." <u>Id.</u> at 202 n.14.

GBForefront's arguments to the contrary and attempts to create an exception to this rule are unavailing. Even if Americold is disregarded and subject matter jurisdiction is analyzed under the law prevailing at the time the Complaint was filed, i.e. Emerald, the outcome is the same. Complete diversity was not present at the time this action was initiated as both GBForefront and FMG were citizens of New Jersey.

Nonetheless, GBForefront advances several alternative arguments as to why this case should not be dismissed for want of subject matter jurisdiction. These arguments are addressed below.

### b. The "Power to Enforce a Settlement" as an Independent Basis for Subject Matter Jurisdiction

GBForefront argues that "any assertion of a lack of jurisdiction is entirely irrelevant and rendered "academic" in light of the Settlement Agreement and defendants' breach thereof" because an independent basis for jurisdiction now exists in this case – namely diversity of citizenship currently exists between the parties. (Pls.' Post-Hr'g Br. p. 7.) According to GBForefront, even if subject matter jurisdiction was lacking at the time a case was initiated, a court may nonetheless enforce a settlement agreement reached therein so long as an independent basis for jurisdiction exists at the time enforcement is sought. GBForefront states that the "seminal case on this point, followed by most of the Circuit Courts, including the Third Circuit, is Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714 (2d Cir. 1974)." (Pl.'s Post-Hr'g Br. p. 6.)

Meetings & Expositions does not support GBForefront's position. In that case, after a settlement had been reached, the district court granted the defendant's motion to dismiss the complaint for lack of personal jurisdiction. Id. at 715-16. The Second Circuit reversed the district court's order, reasoning "[w]hether or not the court previously had personal jurisdiction" over

11

the defendant, when the defendant entered into the agreement, it "consent[ed] to the exercise of the court's power to compel compliance." Id. at 717.

GBForefront's reliance on Meetings is misplaced because personal jurisdiction and subject matter jurisdiction are two distinct concepts. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704 (1982). "[T]he requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." Id. As discussed below, principles of estoppel, waiver and consent do not apply to the issue of subject matter jurisdiction. Id. at 702.

In sum, the fact that I lacked subject matter jurisdiction at the time the initial Complaint was filed unfortunately means that I lack the authority to adjudicate any dispute between the parties. None of the cases on which GBForefront relies hold to the contrary.[5]

---

[5] GBForefront's argument that I should enforce the settlement agreement because diversity of citizenship between the parties presently exists ignores the fact that jurisdiction is evaluated at the time the action was filed. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570-71, (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal") (internal citations omitted).

In further support of its argument, GBForefront cites the following passage: "[i]t is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. Typically, the court does this without inquiring into, or requiring, an independent basis of subject matter jurisdiction for the enforcement/challenge suit." Fox v. Consol. Rail Corp., 739 F.2d 929, 932 (3d Cir. 1984) (citing Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1976). That quotation, however, is taken out of context. Both the Fox and Aro courts recognized that in order to enforce a settlement reached in a separate case, the district court must have had a basis for exercising subject matter jurisdiction over the original settled action if not the separate enforcement action. Fox, 739 F.2d. at 932, Aro, 531 F.2d at 1372.

### c. Estoppel

GBForefront also argues that, even if subject matter jurisdiction is lacking, principles of estoppel bar Defendants from raising that issue now. GBForefront notes that Defendants affirmatively asserted to the Court that subject matter jurisdiction was present when they filed counterclaims and a third-party complaint in this matter and also that Defendants consented to the judgment being entered. GBForefront asserts that, given these affirmative representations and actions, Defendants must be estopped from challenging subject matter jurisdiction at this late stage.

GBForefront's argument is contrary to long-standing black letter law. The Supreme Court has made clear that subject matter jurisdiction:

> functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, <u>principles of estoppel do not apply</u>, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

<u>Ins. Corp. of Ireland</u>, 456 U.S. at 702 (internal citations omitted) (emphasis added); <u>Erie Ins. Exch. v. Erie Indem. Co.</u>, 722 F.3d 154, 162-63 (3d Cir. 2013) (declining "to apply equitable principles in a way that would impermissibly expand federal judicial power in violation of Article III").

Furthermore, it is clear that lack of subject matter jurisdiction can be raised at any stage of the proceedings, even after a final judgment has been entered. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 500 (2006) ("[t]he objection that a federal court lacks subject-matter jurisdiction, <u>see</u> Fed. Rule Civ. Proc. 12(b)(1), may be raised at any stage in the litigation, even after trial and the entry of judgment"); <u>Emerald</u>, 492 F.3d at 197 ("If we determined that the district court did

not have subject matter jurisdiction we would direct it to dismiss the case even at this late stage of the litigation").

### d. Transfer

Lastly, GBForefront states that, in the event that subject matter jurisdiction is lacking, I should transfer the case to the Court of Common Pleas of Montgomery County or Philadelphia County. In support of this request, GBForefront cites 42 Pa. Con. Stat. Ann. § 5103(b), <u>Walker v. Bohmueller</u>, (E.D. PA., No. 03-3750); <u>Miller v. Bohmueller</u>, (E.D. PA., No. 03-6496) and <u>McLaughlin v. ArcoPolymers, Inc.</u>, 721 F.2d 426, 430-431 (3d Cir. 1983).

42 Pa. Cons. Stat. Ann. § 5103 provides:

> (1) . . . Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).
>
> (2) Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth.

42 Pa. Con. Stat. Ann. § 5103(b).

The cases GBForefront cites provide no support for its request that I transfer the case to state court. GBForefront's reliance on <u>Walker v. Bohmueller</u>, (E.D. PA., No. 03-3750) and <u>Miller v. Bohmueller</u>, (E.D. PA., No. 03-6496) are somewhat perplexing. It appears that in both cases, after the actions were reported as settled, the district court dismissed the actions pursuant to Local Rule of Civil Procedure 41.1. (<u>Walker v. Bohmueller</u>, (E.D. PA., No. 03-3750) (Ors. 10/5/05, Doc. No. 143, 155)) and <u>Miller v. Bohmueller</u>, (E.D. PA., No. 03-6496) (Doc. Nos. 92, 93, 102)). Neither case was transferred to state court pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b) or any other authority for that matter.

McLaughlin also does not provide support for GBForefront's request that I transfer this case to state court. In that case, the Third Circuit "remand[ed] [the] action to the district court with directions that it dismiss the action so that plaintiff, pursuant to the amended Pennsylvania statute which is now effective, can transfer this matter by her own action to the Court of Common Pleas of Beaver County, Pennsylvania." McLaughlin v. Arco Polymers, Inc., 721 F.2d 426, 431 (3d Cir. 1983) (emphasis added).

Based on McLaughlin and the plain language of the statute which states that "any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth," it is clear that it is up to the litigants not the Court to pursue, if possible, a transfer of the instant matter pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b).

## V.  CONCLUSION

For the reasons stated above, the Judgment entered April 28, 2015 and the Amended Judgment entered May 28, 2015 will be vacated and this matter will be dismissed for lack of subject matter jurisdiction.